EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de Río Grande, representado por su Alcalde, Ángel B. González Damudt<br><br>Recurrido<br><br>v.<br><br>Adquisición de Finca 27.661 de la Urbanización Industrial Las Flores, del Término Municipal de Río Grande<br><br>Concilio de Salud Integral de Loíza, Inc. y otros<br><br>Peticionarios | Certiorari<br><br>2025 TSPR 36<br><br>215 DPR ___ |

Número del Caso: CC-2024-0100

Fecha: 4 de abril de 2025

Tribunal de Apelaciones:

Panel VII Especial

Representante legal de la parte peticionaria:

Lcda. Maricelle Hernández Guerrero

Representantes legales de la parte recurrida:

Lcda. Josephine M. Rodríguez Ríos
Lcdo. Ricardo M. Prieto García

Materia: *Quiet Title Act* – Escenarios en los que los tribunales locales pueden ejercer su jurisdicción sobre una propiedad en la que el gobierno federal tiene un interés.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Municipio de Río Grande, representado por su Alcalde, Ángel B. González Damudt<br><br>Recurrido<br><br>v.<br><br>Adquisición de Finca 27.661 de la Urbanización Industrial Las Flores, del Término Municipal de Río Grande<br><br>Concilio de Salud Integral de Loíza, Inc. y otros<br><br>Peticionarios | CC-2024-0100 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 4 de abril de 2025.

En esta ocasión, debemos examinar, por primera vez, el alcance del Quiet Title Act, *infra*, con el fin de establecer los escenarios en los que los tribunales locales pueden ejercer su jurisdicción sobre una propiedad en la que el gobierno federal tiene un interés.

Según se detallará a continuación, este Tribunal se reafirma sobre la preminencia de las controversias jurisdiccionales, en particular cuando una parte señala que existe un estatuto federal que podría incidir sobre la capacidad del Tribunal de Primera Instancia para adentrarse en los méritos del caso. Veamos.

# I

El caso ante nuestra consideración tuvo su inicio el 6 de julio de 2022, cuando el Municipio de Río Grande (Municipio) presentó una Petición de expropiación forzosa con el fin de adquirir una propiedad para ubicar las instalaciones de ciertos servicios públicos, entre estos, la Policía Municipal, el Manejo de Emergencias Municipales y la Oficina de Recursos Externos.[1] El Municipio estimó la compensación justa y razonable por la propiedad en $3,600,000, cantidad que consignó en la Secretaría del Tribunal de Primera Instancia. Acompañó su solicitud con un escrito intitulado Exhibit A en el cual describió la propiedad y, en lo pertinente, nombró a tres (3) partes con interés: el Concilio de Salud Integral de Loíza, Inc. (en adelante, CSILO), SZ Development, S.E. (SZ Development), y el Centro de Recaudación de Ingresos Municipales. Además, el Municipio presentó una Moción sobre adquisición y entrega material de la propiedad mediante la cual solicitó la entrega inmediata del inmueble.

El 13 de julio de 2022, el Tribunal de Primera Instancia emitió una Resolución en la cual invistió el título de pleno y el absoluto dominio de la propiedad en el Municipio. Mediante esta también ordenó que el inmueble fuera inscrito a favor del Municipio en el Registro de la Propiedad y

---

[1] Ello fue consignado en la Ordenanza Núm. 2 Serie 20 2020-2021 y la Ordenanza Núm. 28 Serie 2021-2022. Apéndice de Petición de certiorari, págs. 11-23.

dictaminó su entrega, so pena de imposición de un canon mensual de arrendamiento.

El 26 de agosto de 2022, CSILO compareció a través de una Contestación a petición de expropiación y reconvención. En esta, argumentó que el Municipio no tenía facultad para expropiar la propiedad en cuestión porque el gobierno de los Estados Unidos tenía un interés federal en esta, lo que removía, además, la jurisdicción sobre la materia del Tribunal de Primera Instancia. Alegó que el Municipio tenía conocimiento de ello y que presentó una Certificación Registral incompleta que omitió tal interés federal, el cual existía en virtud de ciertos fondos otorgados para la construcción y las mejoras en la propiedad con el fin público de salubridad. Añadió que la petición carecía de los documentos de consulta y ubicación requeridos, como también de evidencia sobre la necesidad de la propiedad para el fin destinado; que la compensación ofrecida no fue justa o razonable, y que el campo estaba ocupado por legislación federal.

En su Reconvención, CSILO sostuvo que el Municipio había ocupado la propiedad y le había privado de todo uso desde antes de haber presentado la solicitud de expropiación. Alegó que ello se debió a que el Municipio se negó a aceptar o eximirle del pago de arbitrios de construcción para el desarrollo de la propiedad, lo que resultó en la imposición

de una multa, un pleito civil y el que no pudiera usar el inmueble.

Simultáneamente, CSILO instó una Urgente solicitud de desestimación por falta de jurisdicción sobre la materia e impugnación de fin público. En síntesis, reiteró lo relacionado con el interés federal por razón de los fondos federales que le fueron otorgados para habilitar la propiedad y ofrecer servicios de salud, lo que le confería jurisdicción sobre la materia al Tribunal Federal. Arguyó, además, que aplicaba la doctrina del campo ocupado, pues la legislación federal bajo la cual se concedieron los fondos tenía preminencia sobre las ordenanzas municipales que autorizaron la expropiación. Finalmente, sostuvo que su fin público de ofrecer servicios médicos a la comunidad tenía primacía sobre el del Municipio.

Además, CSILO presentó una Solicitud de reconsideración y para que se deje sin efecto orden de investidura de título […]. En resumen, reafirmó que, al incluir con su petición una Certificación Registral que excluía los gravámenes del gobierno federal sobre la propiedad, el Municipio incurrió en una omisión crasa y temeraria. Razonó que no podía decretarse la investidura del título a favor del Municipio toda vez que el gobierno federal no había sido incluido en el proceso como parte con interés.

De su parte, el Municipio presentó una Solicitud de desestimación de la reconvención en la cual argumentó que

tal mecanismo era incompatible con el procedimiento de expropiación forzosa. También instó una Oposición a "solicitud de reconsideración y para que se deje sin efecto orden de investidura", mediante la cual sostuvo que la solicitud del CSILO fue presentada fuera de término.

En su Réplica, CSILO reiteró que la investidura de título era nula debido a que el Tribunal de Primera Instancia carecía de jurisdicción para atender la solicitud de expropiación. Asimismo, en su Oposición a "solicitud de desestimación de la reconvención", adujo que no existía prohibición reglamentaria a una reconvención en un procedimiento de esta naturaleza.

En su Oposición a la solicitud de desestimación de CSILO, el Municipio negó que existiera un interés federal sobre la propiedad. Arguyó que del Registro de la Propiedad no surgían documentos que acreditaran la autorización del gobierno federal para transferir su interés de la propiedad original a la ahora en disputa, pues los fondos fueron otorgados para mejoras en una propiedad diferente. Añadió que CSILO incumplió con las condiciones de los fondos federales para establecer el nuevo gravamen, pues no realizó las mejoras, y que, en otros foros judiciales, no se había opuesto a una posible expropiación.

Al replicar a la oposición del Municipio, CSILO señaló que el Municipio reconoció la existencia del interés federal

en su escrito y argumentó que este subsistía aunque no se registrara o no se comenzara la obra de construcción.

Posteriormente, el Municipio instó una Moción del Municipio de Río Grande en solicitud de desalojo e imposición de canon de arrendamiento, seguida por una Moción del Municipio de Río Grande solicitando que se ordene al CSILO que informe los datos del Perito Tasador que utilizará para litigar la justa compensación.

De su lado, CSILO se opuso y reiteró su petición de desestimación, la cual solicitó que se atendiera con prioridad.

El 13 de marzo de 2023, el Tribunal de Primera Instancia emitió una serie de órdenes en las que: (1) declaró no ha lugar la solicitud de reconsideración de CSILO para que se dejara sin efecto la orden de investidura de título y ordenó al Municipio a incluir al gobierno federal como parte con interés; (2) ordenó el desalojo de CSILO y le impuso un canon mensual de arrendamiento de $24,000.00 que comenzaría el 10 de septiembre de 2022 y continuaría hasta el desalojo; (3) concedió veinte (20) días a CSILO para que presentara los datos del perito tasador que utilizaría para litigar la justa compensación, y (4) denegó eliminar a SZ Development como una parte con interés.

En esa misma fecha, el foro primario también dictó una Sentencia parcial en la que desestimó la reconvención de CSILO. Fundamentó su dictamen en que este mecanismo era

incompatible con la naturaleza y legislación del procedimiento de expropiación forzosa.

Por su parte, CSILO presentó una <u>Moción para reiterar</u> <u>"urgente solicitud de desestimación por falta de</u> <u>jurisdicción sobre la materia e impugnación de fin público"</u>. En consecuencia, el Tribunal de Primera Instancia ordenó la respuesta del Municipio, quien se unió a la petición de que se adjudicara el asunto. Así las cosas, el 15 de marzo de 2023, el foro primario declaró <u>no ha lugar</u> la solicitud de desestimación por falta de jurisdicción y campo ocupado.

Inconforme con esta última determinación, CSILO acudió ante el Tribunal de Apelaciones mediante una <u>Petición de</u> <u>certiorari</u>. En esta, reiteró sus argumentos relacionados con el interés federal, la jurisdicción exclusiva sobre la materia del Tribunal Federal y el campo ocupado. Añadió que, bajo la doctrina del fin público previo, el uso público original era de mayor supremacía y señaló que el foro primario falló a favor del Municipio a pesar de que este no pudo refutar estos argumentos.

Unos días más tarde, CSILO presentó un segundo recurso ante el foro apelativo intermedio, esta vez una <u>Apelación</u> dirigida a cuestionar la <u>Sentencia parcial</u> y las órdenes del 13 de marzo de 2023. En primer lugar, objetó la desestimación de su reconvención y el que se permitiera la inscripción de la investidura de título a pesar del interés federal en la propiedad. Protestó, además, que se ordenara el desalojo a

pesar de que el asunto de la jurisdicción no había sido resuelto, y el que se impusiera un canon de arrendamiento sin fundamento alguno para la suma. Finalmente, sostuvo que el Tribunal de Primera Instancia erró en no eliminar a SZ Development del pleito y ordenar la contratación de un perito tasador.

Por su parte, el Municipio presentó su oposición a ambos recursos. En cuanto al primero, reafirmó que no existe un interés federal sobre la propiedad debido a que no surge que el gobierno federal aprobara la transferencia de su interés, porque CSILO incumplió con las condiciones de construcción para que los fondos establecieran el gravamen y por razón de que este no se había opuesto previamente a la expropiación.

Con respecto al segundo, indicó que el Tribunal de Apelaciones no tenía jurisdicción para atender asuntos interlocutorios a través de un recurso de apelación y, además, que las reconsideraciones ante el foro primario habían sido presentadas en destiempo. Afirmó que el proceso de expropiación permite iniciar el proyecto en servicio del bien público a pesar de las objeciones de la parte con interés y que el alegado interés federal no interfería con la autoridad del Tribunal de Primera Instancia para emitir sus órdenes. Arguyó que era inconsecuente que no incluyera a todas las posibles personas con interés en el procedimiento cuando presentó su petición y le fue concedido el título.

Tras consolidar los casos, el Tribunal de Apelaciones emitió una Sentencia el 10 de enero de 2024, mediante la cual confirmó la Sentencia parcial y declinó intervenir en el resto de los asuntos. En síntesis, concluyó que el procedimiento de expropiación forzosa no es uno ordinario que permita alegaciones responsivas. En cuanto a las Órdenes recurridas, determinó que estas constituyeron un ejercicio válido de manejo de caso dentro de los parámetros regulatorios del proceso. Finalmente, dictaminó que CSILO no había demostrado la existencia de un gravamen federal, pues la Certificación del Registrador de la Propiedad no consignó interés federal alguno.

En desacuerdo, CSILO presentó una Solicitud de reconsideración en la cual se enfocó, principalmente, en que la Certificación que acompañó la petición del Municipio estaba incompleta, pues excluía el gravamen del interés federal. Señaló que la Certificación completa obraba en el expediente. El Tribunal de Apelaciones la declaró no ha lugar.

En desacuerdo, CSILO presentó una Petición de certiorari ante este Tribunal. En esta, reafirmó sus argumentos sobre la falta de jurisdicción sobre la materia, el campo ocupado y la doctrina del fin público. Además, enfatizó que el foro apelativo intermedio solo había tomado en consideración la Certificación incompleta del Municipio.

Por su parte, el Municipio insistió en que el interés federal no existía y que, en otros foros, CSILO no se había opuesto a la expropiación.

Expedido el recurso de <u>certiorari</u> y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver, no sin antes examinar el Derecho aplicable a la controversia.

**II**

**A.**

Según hemos afirmado en innumerables ocasiones, la jurisdicción se refiere al poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias. <u>Ruiz Camilo v. Trafon Group, Inc.</u>, 200 DPR 254, 267 (2018). En consecuencia, los tribunales deben ser guardianes celosos de su jurisdicción, lo que los obliga a velar por que los recursos se perfeccionen de forma que les sea posible atenderlos. <u>Pérez Soto v. Cantera Pérez, Inc., et al.</u>, 188 DPR 98, 105 (2013). Ello se debe a que la falta de jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia. <u>Peerless Oil v. Hnos. Torres Pérez</u>, 186 DPR 239, 250 (2012). En fin, un tribunal carece de discreción para asumir jurisdicción donde no la tiene. <u>S.L.G. Szendrey Ramos v. F. Castillo</u>, 169 DPR 873, 882 (2007).

Debido a su impacto sobre la capacidad del tribunal para resolver la controversia, toda cuestión jurisdiccional es privilegiada y debe resolverse con preminencia. <u>González v.</u>

Mayagüez Resort & Casino, 176 DPR 848, 854, 856 (2009). Por consiguiente, cuando el tribunal determina que no tiene jurisdicción sobre la materia, está obligado a desestimar el caso sin entrar en los méritos de la cuestión ante sí. Íd.

En lo pertinente a la controversia ante nuestra consideración, la norma general es que los "tribunales estatales tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales". Íd. Ahora bien, hay asuntos de derecho federal sobre los cuales el gobierno federal puede tener jurisdicción exclusiva cuando el Congreso así lo dispone expresamente o cuando la intención clara de la ley es privar a los tribunales estatales de autoridad sobre tal asunto. Íd.

Como consecuencia de ello, se desarrolló la doctrina del campo ocupado "para evitar conflictos regulatorios y fomentar así una política uniforme". Íd. En relación con ello, en González v. Mayagüez Resort & Casino, supra, en la pág. 857, explicamos lo siguiente:

> Los problemas jurisdiccionales bajo la doctrina de campo ocupado tienen dos aspectos, a saber, el legislativo y el adjudicativo. El concepto jurisdicción legislativa versa sobre quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación. ... [L]a jurisdicción legislativa se refiere a qué ley aplica a determinada controversia .... Mientras que, por otro lado, la jurisdicción judicial se refiere a cuál tribunal (estatal o federal) está autorizado para atender en las controversias que se susciten dentro del enclave.

En lo que hoy nos concierne, el Quiet Title Act, fue creado con la intención de proveer una vía exclusiva mediante la cual peticionarios adversos pudieran cuestionar la titularidad de los Estados Unidos sobre alguna propiedad real. (Traducción nuestra). Block v. North Dakota, 461 US 273, 287 (1983). En específico, en su sección intitulada The Real property quiet title actions, 28 USC sec. 2409(a), este autoriza la presentación de demandas en contra del gobierno federal con el fin de adjudicar un título de bienes inmuebles en disputa en los que los Estados Unidos tengan un interés y delinea la manera en la que estas deben proceder. Tal disposición establece que:

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the **United States claims an interest**, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections 1346, 1347, 1491, or 2410 of this title, sections 7424, 7425, or 7426 of the Internal Revenue Code of 1986, as amended (26 U.S.C. 7424, 7425, and 7426), or section 208 of the Act of July 10, 1952 (43 U.S.C. 666).

(b) The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such

election the district court in the same action shall determine to be just compensation for such possession or control.

(c)    No preliminary injunction shall issue in any action brought under this section.

(d)    The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

(e)    If the **United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title.**

[…]Íd. (Negrillas suplidas).

Este ultimo inciso en particular tiene el fin, en primer lugar, de garantizar que los títulos de propiedad del Gobierno se litiguen en las cortes federales y, en segundo lugar, **minimizar la intrusión federal en las prerrogativas tradicionales de los estados tan pronto se desvanece el interés federal**. (Traducción nuestra). Bily v. Illinois Central Gulf Railroad Co., 637 F.Supp. 127, 131 (N.D.Ill.1986).

Por su parte, el 28 USC sec. 1346 (f) - United States as defendant – dispone, en lo pertinente, que: "**The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by**

**the United States**". (Negrillas suplidas). Es decir, que las cortes de distritos tendrán jurisdicción original exclusiva sobre acciones bajo la sección 2490(a) antes citada.

Ahora bien, las secciones antes citadas dejan claro que un pleito se ubica bajo la jurisdicción exclusiva de la corte de distrito federal si: (1) el gobierno de los Estados Unidos **reclama** un interés sobre la propiedad en cuestión, y (2) se disputa el título sobre una propiedad real.

En esencia, para que un título pueda ser objeto de controversia para los propósitos de este estatuto, el gobierno federal debe haber adoptado una posición con respecto al bien que esté en conflicto con el de una tercera parte. (Traducción nuestra). Mills v. United States, 742 F.3d 400, 405 (9th Cir. 2014). Sin embargo, en Leisnoi, Inc. v. United States, 170 F.3d 1188, 1192 (9th Cir. 1999), la Corte de Distrito concluyó que el reclamo de interés del gobierno federal por una tercera parte puede ser suficiente, de por sí, para nublar el título del peticionario, pues cualquier otra conclusión obraría en contra del estatuto. En fin,

> [t]he Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act. United States v. California, 332 US 19, 40 (1947).

**B.**

El Artículo II, Sección 7 de la Constitución del Estado Libre Asociado consagra el derecho fundamental del ser humano al disfrute de la propiedad. En su Sección 9, tal articulado establece que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación". Ahora bien, tal derecho no es absoluto y está sujeto a ser limitado por el poder del Estado para establecer restricciones sobre la propiedad de los ciudadanos. Municipio de Guaynabo v. Adquisición, 180 DPR 206, 216 (2010).

En línea con ello, la Ley del 12 de marzo de 1903, según enmendada, conocida como la Ley General de Expropiación Forzosa, 32 LPRA sec. 2901 et seq., (Ley de Expropiaciones) dispone las normas y los procedimientos para llevar a cabo una expropiación. De la misma forma, tal procedimiento es también regido por la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V, R. 58.

En lo pertinente, la Sección 4 de la Ley de Expropiaciones dicta lo siguiente:

> La demanda podrá ir dirigida contra los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la misma; o podrá ir dirigida contra la propiedad en sí. Cuando ocurriere esto último, en la demanda se mencionarán, hasta donde sea posible al demandante determinarlo, los nombres de todas aquellas personas que, como dueños, ocupantes, o poseedores de cualquier derecho o interés sobre la propiedad deben ser notificados del procedimiento a los fines del derecho que puedan tener a la compensación que se fije por el valor de la propiedad expropiada, o a los daños que el procedimiento ocasione. 32 LPRA sec. 2905.

De igual forma, su Sección 5 dispone que:

Todas las personas que ocuparen cualquiera de las propiedades descritas en la demanda, que tuvieren o pretendieren tener cualquier interés en la misma o en los daños y perjuicios ocasionados por la expropiación, aunque no se les mencionare en ella, podrán comparecer y alegar su derecho, cada una por lo que respecta al dominio o interés que en la propiedad tuviere o reclamare, de igual modo que si su nombre figurase en la demanda. 32 LPRA sec. 2906.

Expuesto el Derecho pertinente, procedemos a discutir su aplicación a esta controversia.

**III**

Conforme se indicó previamente, CSILO sostiene que el interés federal en la propiedad existe y que el Municipio pretende impugnarlo, sin fundamento legal alguno, con meras alegaciones que no tienen efecto alguno sobre su validez. Reafirma que el mero hecho de que obtuvo fondos federales para realizar mejoras a la propiedad y proveer servicios de salud bajo una legislación federal le confiere jurisdicción sobre el asunto al Tribunal Federal. En la alternativa, indica que, en virtud de las doctrinas del campo ocupado y el fin público, el propósito de la legislación federal que concedió los fondos tiene preminencia sobre las ordenanzas municipales que dieron paso a la expropiación. Reitera, además, que el Tribunal de Primera Instancia no debió emitir sus dictámenes mientras todavía estaba sin resolverse el asunto de la jurisdicción.

Por su parte, el Municipio argumenta que la contención de CSILO representa un ataque al poder soberano del Estado

para ejercer la expropiación forzosa. Insiste en que el comportamiento de CSILO previo a este pleito fue contrario a la postura ahora asumida con respecto a la expropiación, en particular porque también incumplió con los requisitos para poder transferir el interés federal a la propiedad en cuestión. Finalmente, se reafirma en su posición de que el interés federal en la propiedad no existe.

Desde su primera comparecencia en este pleito, CSILO ha señalado que el procedimiento de expropiación se dio de forma acelerada a favor del Municipio sin considerar el posible interés del gobierno de los Estados Unidos en la propiedad en cuestión. Según este explicó, en el 2012 y el 2020, CSILO recibió dos (2) subsidios federales a través de la Oficina de Recursos de Salud y Administración de Servicios del Departamento de Salud y Servicios Humanos (HRSA por sus siglas en inglés): (1) $772,865.00 bajo el American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115 (2009), para sufragar costos de construcción y mejoras en sus facilidades de servicios de salud ("Grant C81CS13585"), y (2) $1,172,440.00 al amparo del Patient Protection and Affordable Care Act, 42 USC 18001 et seq., con el mismo fin de construcción y mejoras a las facilidades ("Grant C8ACS221337").[2]

---

[2]Apéndice de Petición de certiorari, págs. 181-182 y 188-189.

Según surge del expediente, el 3 de diciembre de 2020, CSILO presentó dos (2) instancias al Registrador de la Propiedad en la Sección Tercera de Carolina con el fin de solicitar la inscripción de los Notice of Federal Interest en la propiedad que hoy está en controversia.[3] En los Notice of Federal Interest explicó que, si bien los fondos habían sido desembolsados originalmente para la construcción y mejoras de otro inmueble, CSILO había adquirido otra propiedad -la que hoy nos concierne- y solicitado con éxito el permiso del HRSA para transferir el interés federal a esta.[4] A su vez, CSILO consignó lo siguiente:

> The Notice of Grant Award for this grant includes conditions on the use of the property and provides for a continuing Federal interest in the property. Specifically, the property may not be (1) used for any purpose inconsistent with the statute and any program regulations governing the award under which the property was acquired; (2) mortgaged or otherwise used as collateral without the written permission of the Office of Federal Assistance Manager(OFAM), Health Resources and Services Administration (HRSA), or designee; or (3) sold or transferred to another party without the written permission of Office of Federal Assistance Management (OFAM), Health Resources ans Services Administration (HRSA), or designee, or its designee. These conditions are in accordance with the statutory provision set forth in Title 45 CFR part 74 or 92 (as appropriate, the HHS Grants Policy Statement, and other terms and conditions of award.
>
> These grant conditions and requirements cannot be nullified or voided through a transfer of ownership. Therefore, advance notice of any proposed change in usage or ownership must be provided to the Associate Administrator, Office of

---

[3] Íd., págs. 176-177 y 183-184.

[4] Íd., págs. 178-180 y 185-187.

Federal Assistance Management (OFAM), Health Resources and Services Administration (HRSA), or designee.[5]

No obstante, al momento de instar su <u>Petición de expropiación forzosa</u>, el Municipio presentó una <u>Certificación de Propiedad Inmueble</u> para la finca número 27661 expedida el 9 de mayo de 2022 por el Sr. Luis León Freire, Registrador de la Propiedad, en la que, en la sección de cargas y gravámenes, solo se consigna como condición restrictiva lo siguiente: "Afecta por sí a Condiciones Restrictivas a favor de Compañía de Fomento Industrial de Puerto Rico, según inscripción 1ª".[6]

Tal <u>Certificación</u> registral contrasta con la presentada por CSILO, expedida por el mismo Registrador de la Propiedad el 17 de agosto de 2022, la cual se diferencia en la sección dedicada a "Documentos Pendientes de Despacho", donde se recoge lo relacionado con la expropiación forzosa, y, más importante aún, en la sección de cargas y gravámenes.[7] En la <u>Certificación de propiedad inmueble</u> para la finca número 27661 presentada por CSILO, consta el lenguaje siguiente, el cual, nótese, es idéntico al utilizado en los <u>Notice of Federal Interest</u> antes consignado:

> **Condiciones Restrictivas (sin cuantía):** COMPARECIENTE(S): Oficina de Recursos de Salud y Administración de Servicios del Gobierno Federal (Health Resources and Services Administration) Comparece en este acto Don César A. Rodríguez

---

[5]Íd.
[6]Íd., págs. 24-25.

[7]Íd., págs. 169-170.

Román, mayor de edad, casado, en calidad de Director Ejecutivo del Concilio de Salud Integral de Loíza, y vecino de Canóvanas, Puerto Rico, MANIFIESTA(N) QUE: The Notice of Grant Award for this grant includes condition on use of the aforementioned property and provides for **continuing Federal interest in the property.** Specifically, the **property may not be (1) used for any purpose inconsistent with the statute and any program regulations governing award under which the property was acquired;** (2) mortgaged or otherwise used as collateral without written permission of the Office of Federal Assistance Management (OFAM), Health Resources and Services Administration (HRSA), or designee; or **(3) sold or transferred to another party without the written permission of Office of Federal Assistance Management (OFAM), Health Resources and Services Administration (HRSA), or designee, or its designee.** These conditions are in accordance with the statutary provision set forth in Title 45 CFR part 74 or 92 (as appropriate, the HHS Grants Policy Statement, and other terms and conditions of award. **These grant conditions and requirements cannot be nullified or voided through a transfer of ownership. Therefore, advance notice of any proposed change in usage or ownership must be provided to the Associate Administrator, Office of Federal Assistance Management (OFAM), Health Resources and Services Administration (HRSA), or designee.** Instancia de fecha 3 de diciembre de 2020, jurada y suscrita bajo testimonio número 8869 ante el Notario Víctor M. Rivera Torres, según nota marginal 6.1. […] Instancia de fecha 3 de diciembre de 2020, jurada y suscrita bajo testimonio número 8868 ante el Notario Víctor M. Rivera Torres, según nota marginal 6.2.[8] (Negrillas suplidas).

Entiéndase, hay una incongruencia entre ambas Certificaciones registrales que ha prevalecido inexplicada durante el trayecto de esta controversia. Sin embargo, a pesar de que el resto de la documentación apoya la noción de que la presentada por el Municipio está incompleta, los foros recurridos parecen haber ignorado la presencia de la

---

[8] Íd., pág. 170.

Certificación más completa presentada por CSILO. Conforme se desprende diáfanamente de lo antes indicado, tal Certificación parece establecer que existe un gravamen sobre la propiedad a favor del gobierno federal debido a los fondos federales que CSILO recibió para habilitar el inmueble. No surge del expediente ante nuestra consideración que el gobierno federal renunciara a tal interés.

Según lo indica el estado de Derecho discutido, de conformidad con el Quiet Title Act estamos ante una legislación federal que dispone que un pleito civil sobre la titularidad de una propiedad sobre la cual los Estados Unidos tenga un interés cae bajo la jurisdicción exclusiva de la corte federal, siempre y cuando el gobierno federal haya reclamado tal interés. La única excepción a esa restricción jurisdiccional es que el gobierno federal haya renunciado a su interés. Es solo bajo esta condición que otros tribunales obtienen jurisdicción sobre la propiedad y cualquier controversia de titularidad al respecto.

Como bien señaló CSILO, siendo el eje de esta controversia la titularidad de la propiedad sobre la cual aparenta constar un interés federal, existe un posible conflicto en la jurisdicción para disponer sobre esta. Esto, pues, del gobierno federal, en efecto, tener y reclamar un interés en el inmueble, el Tribunal de Primera Instancia estaría impedido de actuar sobre este en el procedimiento de expropiación forzosa.

De nuevo, enfatizamos que toda cuestión jurisdiccional tiene prioridad en una controversia y debe resolverse con preferencia a cualquier otro asunto. Tal precepto constituye una cuestión de umbral aún en procedimientos de naturaleza extraordinaria o expedita como la acción de expropiación forzosa de epígrafe.

Por consiguiente, resolvemos que el Tribunal de Primera Instancia erró al emitir <u>Órdenes</u> e incluso una <u>Sentencia parcial</u> previo a resolver el asunto jurisdiccional de umbral. Asimismo, erró al asumir jurisdicción sobre la controversia sin solicitar la comparecencia del gobierno federal para que este afirmara o rechazara su interés aparente en la propiedad.

Dicho de otro modo, el Tribunal de Primera Instancia tenía que resolver la cuestión jurisdiccional con preminencia y ello solo podía hacerse con la presencia de todas las partes pertinentes. En consecuencia, este Tribunal concluye que, hasta tanto no comparezca el gobierno federal, la jurisdicción del foro primario está en controversia y procede la revocación de toda decisión emitida previo a resolver tal asunto. Corresponde, entonces, que el Tribunal de Primera Instancia notifique del presente pleito al gobierno federal y de esta manera ausculte su jurisdicción para disponer sobre la propiedad.

**IV**

Por los fundamentos expresados, se revocan los

dictámenes recurridos y se devuelve el asunto al Tribunal de Primera Instancia para que evalúe, con preminencia, el asunto de la jurisdicción de forma consecuente con lo aquí pautado.

Se dictará Sentencia de conformidad.


                              Luis F. Estrella Martínez
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Municipio de Río Grande, representado por su Alcalde, Ángel B. González Damudt<br><br>Recurrido<br><br>v.<br><br>Adquisición de Finca 27.661 de la Urbanización Industrial Las Flores, del Término Municipal de Río Grande<br><br>Concilio de Salud Integral de Loíza, Inc. y otros<br><br>Peticionarios | CC-2024-0100 | Certiorari |

Sentencia

En San Juan, Puerto Rico, a 4 de abril de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revocan los dictámenes recurridos y se devuelve el asunto al Tribunal de Primera Instancia para que evalúe, con preminencia, el asunto de la jurisdicción de forma consecuente con lo aquí pautado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo