ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| EVANGELISTA RÍOS EXCIA<br><br>Recurrida<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Peticionarios | KLCE202500494 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.<br>A AC2012-0152<br><br>Sobre:<br>Impugnación de Confiscación |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico a 30 de mayo de 2025.

Comparece ante nos, el Estado Libre Asociado de Puerto Rico, en representación de la Oficina del Procurador General, en adelante, el Estado o peticionario, quien solicita que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Aguadilla, en adelante TPI, el 6 de marzo de 2025 y notificada el 19 de marzo de 2025. Mediante esta, el foro primario levantó una paralización establecida por el Tribunal.

Por los fundamentos que expondremos a continuación, procedemos a expedir el auto solicitado y *revocamos* la *Resolución* recurrida.

## I.

El 22 de octubre de 2012 la Sra. Evangelista Ríos Excia, en adelante, la recurrida, presentó una *Demanda* sobre impugnación de confiscación.[1] En la referida demanda, la recurrida indicó que

---
[1] Apéndice, pág. 1.

Número Identificador
SEN2025 _____

era dueña de un vehículo marca Toyota modelo Rav4 del año 2006 con número de tablilla GVN-178. El mencionado vehículo fue confiscado el 22 de agosto de 2012 por haber violado el Artículo 204 del Código Penal de Puerto Rico, Ley 146-2012, 33 LPRA sec. 5274, en el municipio de San Sebastián, Puerto Rico.

Surge del pliego, que el vehículo de la recurrida fue tasado por la División de Vehículos de Motor del Departamento de Transportación y Obras Públicas por la suma de once mil dólares ($11,000.00).[2]

La recurrida alegó en su petitorio que, según lo dispuesto en la Ley Uniforme de Confiscaciones de Puerto Rico, en adelante, Ley de Confiscaciones, Ley 119-2011, 34 LPRA 1724 *et seq,* el Estado estaba obligado a notificar a las partes afectadas de la confiscación, la tasación realizada al vehículo en un término de treinta (30) días a partir de la certificación de inspección de vehículos de motor. Sin embargo, no fue hasta el 4 de octubre de 2012 que la recurrida alega que recibió la correspondencia.[3]

El 10 de noviembre de 2014 el TPI emitió *Sentencia* declarando *Ha Lugar* la demanda presentada por la recurrida y ordenó al Estado a que le devolviera a la recurrida sus bienes incautados, o en su defecto, el monto de la tasación, más los intereses.[4]

En varias ocasiones la recurrida presentó *Moción Solicitando Ejecución de Sentencia*, solicitando que el Estado le devolviera sus bienes incautados o en su defecto, el pago sobre la cantidad de la tasación.[5]

---

[2] Íd.
[3] Íd.
[4] Apéndice, pág. 7.
[5] Apéndice, págs. 10- 14.

Posteriormente, el 13 de febrero de 2024, la recurrida nuevamente sometió una *Moción Solicitando Ejecución de Sentencia* para que el TPI ordenara al Estado a cumplir con el dictamen emitido.[6]

Luego de varios trámites procesales, el 16 de diciembre de 2024 el Estado presentó *Moción en Solicitud de Orden*, solicitándole al TPI que desestimara la demanda si la recurrida no podía probar la existencia de "proof of claim" bajo el estatuto de la Ley PROMESA.[7]

En cumplimiento de orden, el 13 de febrero de 2025, la recurrida arguyó que en el caso de epígrafe no le aplicaba la limitación impuesta por la Ley PROMESA, debido a que el estatuto no estaba vigente al momento de dictarse la Sentencia.[8]

El 6 de marzo de 2025, el TPI emitió una *Resolución* ordenando al Estado a que procediera con la devolución de la unidad Toyota Rav4, perteneciente a la recurrida o en su defecto a depositar el valor de la tasación más los intereses devengados.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 5 de mayo de 2025, la parte peticionaria compareció ante nos mediante el presente recurso de *Certiorari*. En el mismo formula el siguiente señalamiento de error:

> El Tribunal de Primera Instancia erró al permitir la continuación de los procedimientos, a pesar de que, según las disposiciones del Plan de Ajuste y de la Orden de Confiscación y el hecho de que la recurrida no acreditó haber presentado un *proof of claim* no tiene jurisdicción para ello.

---

[6] Apéndice, pág. 16.
[7] Apéndice, pág. 31.
[8] Apéndice, pág. 45.

Con el beneficio de los escritos de ambas partes, disponemos.

**II.**

**A.**

Sabido es que el recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera, et al. v. Arcos Dorados, et al., 212 DPR 194, 207-208 (2023); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 728 (2016); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). Mediante la presentación de un recurso de *certiorari* se pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso que atienden.  Distinto al ejercicio de sus funciones respecto a un recurso de apelación, el tribunal al que se recurre mediante el vehículo procesal del recurso de *certiorari* tiene discreción para atender el asunto planteado, ya sea expedir el auto solicitado o denegarlo. 800 Ponce de León v. AIG, *supra,* pág. 174; Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 593 (2011); Pueblo v. Díaz de León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005).

La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional. Estos son:

A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4  LPRA Ap. XXII-B, R. 40.

BPPR v. SLG Gómez-López, *supra* pág. 337.

Ahora bien, la correcta consecución de la justicia necesariamente conlleva reconocer a los juzgadores de los foros primarios un amplio margen de deferencia respecto al ejercicio de sus facultades adjudicativas dentro del proceso que dirigen.  De ordinario, el criterio judicial empleado en el manejo de un caso al emitir pronunciamientos de carácter interlocutorio está revestido de gran autoridad.  De ahí la premisa normativa que califica la tramitación de los asuntos en el tribunal primario como una inherentemente discrecional del juez.  Siendo así, y sin apartarse de los preceptos pertinentes al funcionamiento del sistema judicial, el adjudicador concernido está plenamente facultado para conducir el proceso que atiende conforme le dicte su buen juicio y discernimiento, siempre al amparo del derecho aplicable. In re Collazo I, 159 DPR 141, 150 (2003).  Cónsono con ello, sabido es que los tribunales apelativos no "deben intervenir con

determinaciones emitidas por el foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto". Citibank *et al* v. ACBI et al., 200 DPR 724, 736 (2018).

A su vez, la denegatoria a expedir el auto de certiorari, no implica la ausencia de error en el dictamen cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Por el contrario, es corolario del ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 98 (2008).

**B.**

El 3 de mayo de 2017 la Junta de Supervisión y Administración Financiera para Puerto Rico presentó una petición de quiebra a nombre del Gobierno de Puerto Rico, según lo permite el Título III del Puerto Rico Oversight, Management, Economic Stability Act (PROMESA) 48 USC sec. 2101 *et seq*. En lo pertinente, la sección 301(a) del Título III de PROMESA incorporó las secciones 362 [1] y 922 del Código Federal de Quiebras en torno a paralizaciones automáticas de pleitos contra el deudor y su propiedad. *Íd.*, sec. 2161(a); Lacourt Martínez, et al v. Jta. Lib. et al, 198 DPR 786, 787 (2017); Lab. Clínico, et al v. Depto. Salud et al, 198 DPR 790, 791 (2017). Ello trajo la paralización automática de aquellos pleitos que generalmente reclaman, como parte de los remedios, una compensación monetaria. Requena Mercado et als. v. Policía, 205 DPR 285, 291 (2020). Véase, además, 48 USC sec. 2161(a); 11 USC secs. 362 y 922; Depto. de Hacienda v. COTIARI, 203 DPR 1031, 1055 (2020). El objetivo principal de la paralización es liberar al deudor de presiones

financieras mientras se dilucida el procedimiento de quiebra. Lacourt Martínez v. Jta. Lib. et al, *supra,* pág. 788.

Para ello, se ha reconocido unánimemente que los tribunales locales poseen jurisdicción concurrente para evaluar si un caso está efectivamente paralizado o, si está sujeto a las excepciones de la referida paralización, en virtud del Título III de PROMESA. Requena Mercado et als. v. Policía, *supra,* pág. 291; Lab. Clínico et al. v. Depto. Salud et al., *supra*, pág. 792; Lacourt Martínez et al. v. JLBP et al., *supra*, pág. 788.

Luego de que el Gobierno realizara una petición de quiebra, al amparo del Título III de PROMESA, el 18 de enero de 2022, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico confirmó el Plan de Ajuste Fiscal. El foro federal, por voz de la Honorable Jueza Laura Taylor Swain, emitió el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority (Confirmation Order)* el cual entró en vigor el 15 de marzo de 2022. En lo pertinente, el párrafo 59 del *Confirmation Order* (Orden de Confirmación), dispuso un mecanismo de interdicto en las reclamaciones, que establece lo siguiente:

> **59. Injunction on Claims.**
> Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, **all Entities who have held, hold, or in the future hold Claims** or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future

hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan **are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim** or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, […]

Por otro lado, el precitado inciso sustituye el efecto de paralización automática de casos ocasionada por la aprobación y vigencia de la Sección 301 del Título III de PROMESA.

En conformidad con lo anterior, la Sección 92.2 del *Plan de Ajuste* instaura un trámite para gestionar la paralización de reclamos monetarios contra el Gobierno. Para ello, establece el mecanismo de descarga y relevo de acciones en atención a la quiebra. Establece lo siguiente:

**92.2 Discharge and Release of Claims and Causes of Action**:

a) Except as expressly provided in the Plan or the Confirmation Order, **all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will**

**have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however**, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. **Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date**), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a **proof of claim** based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non- Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

**C.**

Por su parte, es norma reiterada que los tribunales de justicia deben ser celosos guardianes de su jurisdicción, estando obligados a considerar tal asunto aún en defecto de señalamiento de este. Mun. Río Grande v. Adquisición Finca, 2025 TSPR 36, 215 DPR __ (2025); Mun. Aguada v. W. Const. y Recovery Finance, 2024 TSPR 69; 213 DPR __ (2024); Mun. De San Sebastián v. QMC Telecom, 190 DPR 652, 660 (2014); Moreno González v. Coop. Ahorro Añasco, 177 DPR 854, 859 (2010); S.L.G. Szendrey-Ramos v. F. Castillo, 169 DPR 873, 882 (2007). La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. Mun. Río Grande v. Adquisición Finca, *supra*; Freire Ruiz et al. v. Morales, Hernández, 2024 TSPR 129, 214 DPR __ (2024); Mun. Aguada v. W. Const. y Recovery Finance, *supra*; R & B Power Inc. v. Junta Subastas ASG, 213 DPR 685, 698 (2024); Miranda Corrada v. DDEC et al., 211 DPR 738, 745 (2023); Torres Alvarado v. Madera Atiles, 202 DPR 495, 499-500 (2019); Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 267 (2018). Por tanto, las cuestiones que le son relativas ostentan carácter privilegiado y deben resolverse con preferencia a cualesquiera otras. Ríos Martínez, Com. Alt. PNP v. CLE, 196 DPR 289, 296 (2016); S.L.G. Szendrey-Ramos v. F. Castillo, *supra*, pág 882.

La falta de jurisdicción no es susceptible de ser subsanada, por lo que, ante lo determinante de este aspecto, los tribunales pueden considerarlo, incluso, motu proprio. Freire Ruiz et al. v. Morales, Hernández, *supra*; Mun. De San Sebastián v. QMC Telecom, *supra*, pág. 660; S.L.G. Szendrey-Ramos v. F. Castillo, *supra,* pág. 883; García v. Hormigonera Mayagüezana, 172 DPR 1, 7 (2007). Al amparo de dicha premisa, el estado de derecho

les impone el deber ministerial e indelegable de evaluar los asuntos jurisdiccionales, puesto que inciden directamente en el poder de adjudicación que les asiste.  Siendo de esta forma, ante una determinación de falta de jurisdicción, los tribunales solo vienen llamados a así declararlo.  Freire Ruiz et al. v. Morales, Hernández, *supra*; Torres Alvarado v. Madera Atiles*, supra*, pág. 500.  Como secuela, únicamente procede que decreten la desestimación de la causa sometida a su escrutinio.  *Íd*; Freire Ayala v. Vista Rent, 169 DPR 418, 433 (2006).  Tan trascendental es observar este principio que, un juez que actúe en ausencia clara de jurisdicción podría quedar sujeto a la imposición de responsabilidad.  Stump v. Sparkman, 435 US 349, 356-357 (1978).

**III.**

En el recurso de epígrafe, el Estado señala que el TPI incidió al continuar con los procedimientos cuando la recurrida no presentó el "proof of claim" por lo cual el foro no tenía jurisdicción para detener la paralización de los procesos.

Luego de examinar sosegadamente el expediente ante nuestra consideración, determinamos que procede la expedición del auto de *certiorari*. Surge del expediente que el Estado le solicitó al TPI que le ordenara a la recurrida probar que había presentado un "proof of claim" ante el Título III del Plan de Ajuste o de lo contrario se tendría que desestimar la demanda por falta de jurisdicción. Esta petición es cónsona al derecho vigente, pues avala el trámite aplicable para este tipo de casos. No obstante, la recurrida indicó que su causa de acción fue antes de que entrara en vigor el estatuto de la Ley PROMESA, por lo que no le aplicaba presentar su "proof of claim". Ello no es correcto, el foro primario

acogió el argumento de la recurrida referente a que no le aplicaba presentar un "proof of claim", por lo que denegó la solicitud del Estado y continuó el caso sin examinar a fondo el alcance de su jurisdicción.

El presente caso trata de una reclamación monetaria donde resultaba mandatorio requerir la acreditación del "proof of claim" sobre este reclamo. De lo contrario, el foro juzgador no tendría jurisdicción para atender el caso. Si bien es cierto, que el foro primario le dio la oportunidad a la recurrida para presentar el "proof of claim", ésta no lo proveyó bajo el argumento de que su reclamación fue antes de entrar en vigor el estatuto de PROMESA.

Sobre este particular, especificamos que el foro primario erró al levantar la paralización de los procesos, pues nunca tuvo ante si una evidencia de que la recurrida presentara su "proof of claim" y las circunstancias presentadas no estaban sujetas a las excepciones de la paralización bajo el Título III de la Ley PROMESA.

Por último, es menester mencionar que nuestro ordenamiento jurídico no favorece la desestimación o la paralización automática de los casos, sin embargo, ello no es impedimento para que los tribunales incumplan con el ejercicio ministerial de examinar cautelosamente el alcance de su jurisdicción. De manera que, concluimos que erró el foro primario al denegar la petición del Estado, pues sin la presentación de un "proof of claim", el tribunal primario no tenía jurisdicción para actuar como hizo.

## IV.

Por los fundamentos que anteceden, lo que hacemos formar parte de este dictamen, expedimos el recurso de *Certiorari* y revocamos la Resolución contra la que se recurre.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones