ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ADMINISTRACIÓN DE TERRENOS DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>SUCESIÓN DE YOLANDA GARCÍA HERMIDA Compuesta por MATILDE OTILIA, RAMÓN MANUEL, CARLOS JAVIER, todos de apellidos ARBONA GARCÍA<br><br>Apelantes | KLAN202500446 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Caso Número:<br>K EF2006-0600<br><br>Sala: 1002<br><br>Sobre:<br>Expropiación Forzosa |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 7 de agosto de 2025.

Comparece ante nos la parte apelante, la Sucesión de Yolanda García Hermida, compuesta por Matilde O. Arbona García, Ramón M. Arbona García y Carlos J. Arbona García (en adelante, Sucesión García Hermida o parte apelante), y nos solicita la revisión de la *Sentencia* emitida y notificada el 19 de marzo de 2025, por el Tribunal de Primera Instancia, Sala de San Juan. Mediante esta, el Foro Primario autorizó la expropiación forzosa, quedando investido el título de dominio a favor de la Administración de Terrenos de Puerto Rico (en adelante, parte apelada o Administración de Terrenos). Además, concedió como justa compensación por la propiedad, setecientos sesenta y cinco mil cuatrocientos veinticuatro dólares con cuarenta centavos ($765,424.40).

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia* apelada.

**I.**

El 27 de octubre de 2006 la Administración de Terrenos presentó una petición de expropiación forzosa contra la Sucesión García Hermida, con relación a un terreno de uso agrícola, ubicado en Barrios Ceiba Baja y Guerrero, en el municipio de Aguadilla.[1] En esta, indicó que la adquisición del título de absoluto dominio era de necesidad y utilidad pública para cumplir con los propósitos por los cuales se creó la Administración de Terrenos. Asimismo, en la petición, la parte apelada estimó como justa compensación una cantidad de doscientos noventa y cinco mil setecientos dólares ($295,700.00).

Más adelante, el 27 de noviembre de 2006, la parte apelante objetó la referida cantidad. En síntesis, la Sucesión García Hermida arguyó que el valor de la propiedad debía calcularse a partir del año 2006, y no desde el año 1968 como planteó la parte apelada. Luego de que el Foro Primario resolviera a favor de la parte apelante, la Administración de Terrenos acudió ante este Tribunal de Apelaciones, en el cual un Panel Hermano confirmó la determinación.[2]

Como consecuencia de ello, la Administración de Terrenos informó que enmendaría el *Exhibit A.* Luego de múltiples incidentes procesales, en el año 2013, la parte apelada le notificó a la parte apelante un *Informe de Valoración* preparado por el tasador Esteban Núñez Camacho (en adelante, Núñez Camacho), quien estimó el valor de la propiedad en setecientos sesenta y cinco mil quinientos dólares ($765,500.00). Por lo cual, se

---

[1] Apéndice, págs. 30-35.
[2] Caso Núm. KLCE20081478.

enmendó el *Exhibit A* para reflejar como justa compensación el referido valor.

Más adelante, en el año 2017, la parte apelada presentó un nuevo *Informe de Valoración* preparado por el tasador Néstor Algarín, quien estimó el valor del terreno en setecientos seis mil quinientos dólares ($706,500.00). A pesar de que la Administración de Terrenos solicitó enmendar nuevamente el *Exhibit A*, el Foro Primario no actuó sobre ello, por lo que el valor que permaneció en la petición era el de setecientos sesenta y cinco mil quinientos dólares ($765,500.00).

Así las cosas, el 9 de agosto de 2019, la Administración de Terrenos presentó una *Moción para Informar,* mediante la cual indicó que presentaría como perito al tasador Wilfredo Cruz Lanausse (en adelante, Cruz Lanausse).[3] Alegó que, por razones presupuestarias, no podría presentar a Núñez Camacho, ni tampoco a Néstor Algarín, por este haber sufrido un percance de salud. Esbozó que Cruz Lanausse revisó los informes que realizaron los previos tasadores, y que, luego de hacer la investigación pertinente, concurrió que el justo valor de la propiedad era de setecientos sesenta y cinco mil quinientos dólares ($765,500.00), por lo que no era necesario autorizar la enmienda solicitada previamente.

Así las cosas, el Foro Primario ordenó a la Sucesión García Hermida a expresar su posición sobre la solicitud de la parte apelada, por lo que, el 5 de septiembre de 2019, la parte apelante presentó una *Moción en Cumplimiento de Orden,* en la cual expresó no tener reparos con el cambio de perito, sujeto a que no se presentaran los testimonios de Núñez Camacho y Néstor

---

[3] Apéndice, págs. 66-68.

Algarín.[4]  Luego, el 20 de septiembre de 2019, la Administración de Terrenos presentó una *Moción en Cumplimiento de Orden y para Informar*, mediante la cual adujo que Cruz Lanausse declararía sobre el proceso que llevó a cabo para revisar los informes de valoración previamente notificados, el cual lo llevó a concurrir con el valor estimado por Núñez Camacho.[5] Igualmente, reiteró que no presentaría en el juicio a los otros tasadores.

Luego de varios incidentes procesales y múltiples suspensiones de vistas, el 18, 19 y 26 de mayo de 2022 se celebró el juicio en su fondo. En este, la parte apelante presentó el testimonio del tasador Ismael Isern Suárez, así como un *Informe de Valoración* hecho por este. Por otro lado, la parte apelada presentó el testimonio del tasador Cruz Lanausse, así como la siguiente prueba documental:

- Exhibit A: *curriculum vitae* del Sr. Cruz Lanausse
- Exhibit B: Informe de Revisión del Sr. Cruz Lanausse
- Exhibit C: Informe de Valoración del Sr. Núñez Camacho
- Exhibit D: Informe de Valoración del Sr. Néstor Algarín

Evaluada la prueba presentada por ambas partes, el 19 de marzo de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* apelada.[6] En esta, el Foro *a quo* señaló que en el *Informe de Revisión* preparado Cruz Lanausse se emitió una opinión sobre la calidad del trabajo de los otros dos (2) tasadores. Igualmente, en este, el perito hizo una determinación sobre si las apreciaciones anteriores eran aceptables o no, así como que produjo una nueva opinión de valor en cumplimiento con los estándares del *Uniform Standards of Professional Appraisal Practice* (en adelante, USPAP).

---

[4] Apéndice, págs. 69-70.
[5] Apéndice, págs. 71-73.
[6] Apéndice, págs. 1-29.

El Tribunal de Primera Instancia también señaló que del testimonio de Cruz Lanausse surgió que este visitó la propiedad en controversia en varias ocasiones antes de preparar su informe. Indicó que el perito investigó otras ventas comparables adicionales que le ayudaron a sustentar el valor de setecientos sesenta y cinco mil quinientos dólares ($765,500.00) como uno razonable. De este modo, esbozó que Cruz Lanausse ejecutó una revisión de cambio que lo llevó a aceptar la tasación como suya.

Así, entonces, el Foro Primario concluyó que se cumplió con la Regla 58.3 (c)(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 58.3. Igualmente, determinó que el valor de justa compensación era de setecientos sesenta y cinco mil cuatrocientos veinticuatro dólares con cuarenta centavos ($765,424.40). Por último, declaró a favor de la Administración de Terrenos el título en pleno y absoluto dominio de la propiedad.

Inconforme, el 19 de mayo de 2025, la parte apelante acudió ante nos mediante el recurso de epígrafe y señala la comisión de los siguientes errores:

> **PRIMERO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO SEGUIR LA LETRA CLARA Y EXPRESA DE LA LEY DE EXPROPIACIÓN FORZOSA Y LA DE LA REGLA 58.3 DE LAS DE PROCEDIMIENTO CIVIL CUANDO, EN LUGAR DE UTILIZAR UN INFORME DE VALORACIÓN PARA DETERMINAR EL JUSTO VALOR DE UNA PROPIEDAD, UTILIZÓ TESTIMONIO SOBRE UN "INFORME DE REVISIÓN" PARA DICHO PROPÓSITO.
>
> **SEGUNDO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL BASAR SU DETERMINACIÓN EN UN TESTIMONIO QUE CONSTITUYE PRUEBA DE REFERENCIA PUES LOS TASADORES PERITOS QUE PREPARARON LOS INFORMES DE VALORACIÓN, EN LOS CUALES SE CENTRÓ DICHO TESTIMONIO, Y QUE LUEGO EL TRIBUNAL UTILIZÓ PARA RESOLVER, NO ESTUVIERON PRESENTES PARA TESTIFICAR Y SER CONTRAINTERROGADOS.

## II.

### A.

El procedimiento judicial de expropiación forzosa comienza cuando el Estado insta una acción conforme al procedimiento

establecido en la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.,* y la Regla 58 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 58. <u>AAA v. Cortés Flores y otros</u>, 2024 TSPR 96, 214 DPR __ (2024); <u>Mun. de Guaynabo v. Adquisición M²</u>, 180 DPR 206, 217 (2010).  Dicho procedimiento es uno de naturaleza civil *in rem,* por lo que va dirigido contra la propiedad misma, y no contra las personas dueñas. <u>Olivero v. Autoridad de Carreteras</u>, 107 DPR 301, 306 (1978); <u>Pueblo v. 632 Metros Cuadrados de Terreno</u>, 74 DPR 961, 970 (1953).

Asimismo, la acción de expropiación forzosa tiene límites constitucionales que protegen al propietario contra actuaciones abusivas o arbitrarias del Estado. <u>Adm. Terrenos v. Corp. Pesquera Henares</u>, 201 DPR 14, 21 (2018); <u>Mun. de Guaynabo v. Adquisición M²</u>, *supra*, págs. 228-229. Por ello, la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, sec. 9, Const. ELA, 1 LPRA, Tomo 1*;* <u>AAA v. Cortés Flores y otros</u>, *supra*; <u>López y otros v. A.E.E.</u>, 151 DPR 701, 706 (2000).

Conforme a ello, la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V, R. 58, establece que, junto a la demanda o acción de expropiación forzosa se presentará un legajo de expropiación. <u>Mun. Río Grande v. Adquisición Finca</u>, 2025 TSPR 36, 215 DPR __ (2025); <u>AAA v. Cortés Flores y otros</u>, *supra.*  Entre los documentos que deben incluirse en el mismo, se encuentra el *Exhibit A*, donde se identificará la propiedad a ser expropiada, los datos registrales, el número catastral, las personas con interés sobre la misma y

una fijación de suma de dinero estimada por la parte peticionaria como una justa compensación.

El propósito de la justa compensación es poner a la parte con interés en una posición pecuniaria tan buena como si la propiedad no hubiese sido expropiada. Adm. De Terrenos v. Ponce Bayland, 207 DPR 586, 607 (2021); E.L.A. v. Rexco Industries, Inc., 137 DPR 683, 689 (1994). Se considerará que esta es justa si refleja el valor en el mercado del bien en controversia. Adm. De Terrenos v. Ponce Bayland, *supra,* pág. 607; E.L.A. v. Fonalledas Córdova, 84 DPR 573, 579 (1962).

De igual forma, la Regla 58.3 (c)(5), 32 LPRA Ap. V, R. 58.3, dispone que el legajo de expropiación debe incluir, entre otras cosas, un informe de valoración rendido por el perito tasador. En este informe, se podrá apreciar la investigación que realizó el perito y el análisis de los datos obtenidos que sustentan la conclusión sobre cuál debe ser el justo valor de la propiedad en controversia. C. Torres Torres, *La Expropiación Forzosa en Puerto Rico Ley, Jurisprudencia Estudio y Guía Práctica*, 2002, págs. 195-196. Por ello, nuestro Máximo Foro reconoce la importancia del testimonio pericial en procedimientos de expropiación forzosa. Específicamente, en Martínez Rivera v. Tribunal Superior, 85 DPR 1, 11 (1962), el Tribunal Supremo indicó que es "innegable que el resultado de estos pleitos, en lo que se refiere a la fijación de la compensación final, depende en gran parte del testimonio pericial […]".

**B.**

La prueba de referencia es una declaración, oral o escrita, que no se hizo en el juicio o vista en que se ofrece como evidencia para probar la verdad de lo aseverado. Regla 801 de Evidencia, 32 LPRA Ap. VI, R. 801. Como regla general, la prueba de

referencia es inadmisible. Regla 804 de Evidencia, 32 LPRA Ap. VI, R. 804. "Esta regla de exclusión está primordialmente fundada en la ausencia de garantías circunstanciales de confiabilidad y exactitud, y en el hecho de que la persona que hace la aseveración no está disponible para ser contrainterrogada". P.N.P. v. Rodríguez Estrada, Pres. C.E.E., 123 DPR 1, 34 (1988). Ello lesiona, además, el derecho que tienen las partes de confrontarse con la prueba en su contra, el cual forma parte del debido proceso de ley que tiene cualquier parte en un procedimiento judicial. Íd, págs. 34-35.

No obstante, hay excepciones en las cuales la prueba de referencia podría ser admisible. Entre ellas, se encuentra el testigo capacitado como perito. A diferencia de cualquier otro tipo de testigo, la Regla 704 de Evidencia, 32 LPRA Ap. VI, R. 704, señala que el testigo pericial puede basar su opinión en hechos o datos que personas expertas en ese campo razonablemente utilicen para formar sus opiniones sobre el asunto en controversia, independientemente de que los mismos sean admisibles en evidencia.

Por su parte, la Regla 702 de Evidencia, 32 LPRA Ap. VI, R. 702, dispone que un testigo será capacitado como perito cuando su conocimiento científico, técnico o especializado sea de ayuda para que el juzgador pueda entender una prueba en particular o determinar un hecho en controversia. Mc Neill Healthcare v. Mun. Las Piedras II, 206 DPR 659, 677 (2021). Conforme a la referida regla, el valor del testimonio pericial estará sujeto a la evaluación de los siguientes factores, entre otros:

> (a) Si el testimonio está basado en hechos o información suficiente;
> (b) si el testimonio es el producto de principios y métodos confiables;

(c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
(d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
(e) las calificaciones o credenciales de la persona testigo, y
(f) la parcialidad de la persona testigo.

32 LPRA Ap. VI, R. 702.

## C.

La *Resolución* objeto de esta apelación, como cualquier Resolución o Sentencia, están revestidas de una presunción de corrección. Vargas Cobián v. González, 149 DPR 859, 866 (1999). Como corolario, es norma reiterada que los foros apelativos no debemos intervenir con las determinaciones de hechos del Tribunal de Primera Instancia, su apreciación sobre la credibilidad de los testigos y el valor probatorio conferido a la prueba presentada en sala, pues solo contamos con "récords mudos e inexpresivos". Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013); S.L.G. Rivera Carrasquillo v. A.A.A., 177 DPR 345, 356 (2009).

Esta deferencia corresponde a que es el foro de instancia el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada y está en mejor posición para evaluar el comportamiento y adjudicar la credibilidad de los testigos. S.L.G. Rivera-Pérez v. S.L.G. Díaz-Doe, et al, 207 DPR 636, 657 (2021); Muñiz Noriega v. Muñiz Bonet, 177 DPR 967, 987 (2010); S.L.G. Rivera Carrasquillo v. A.A.A. *supra*, pág. 356. Asimismo, en Rivera Menéndez v. Action Service, 185 DPR 431, 444 (2012), nuestro Máximo Foro expresó lo siguiente:

> [C]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho. De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de esa prueba, nos cause una insatisfacción o

intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia.

Conforme a ello, y en lo pertinente al caso ante nos, la Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V (2009), R. 42.2, establece que: "…[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". Por lo tanto, "[s]ólo se podrá intervenir con estas conclusiones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba". González Hernández v. González Hernández, 181 DPR 746, 777 (2011).

A la luz de lo anterior, un tribunal apelativo está impedido de sustituir por sus propias apreciaciones las determinaciones de hechos del Foro Primario, fundamentándose en un examen del expediente presentado para su escrutinio. Dávila Nieves v. Meléndez Marín, *supra*, pág. 770. Por tanto, para que un foro revisor revoque las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, la parte que las cuestione deberá demostrar y fundamentar que medió pasión, prejuicio, parcialidad o error manifiesto por parte del juzgador. Barreto Rivera et al v. East Coast, 213 DPR 852, 889 (2024); SLG Rivera Carrasquillo v. A.A.A., *supra,* pág. 356. Véase, además*,* Flores v. Soc. de Gananciales, 146 DPR 45, 49 (1998). Dicho de otra manera, en ausencia de prejuicio, parcialidad, error manifiesto o abuso de discreción, de ordinario, el pronunciamiento del foro primario será sostenido en toda su extensión por el tribunal intermedio. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016); Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 709 (2012).

Por su parte, cuando se trata de una opinión pericial, los tribunales no están obligados a seguir indefectiblemente la misma, especialmente cuando está en conflicto con la opinión de otro perito. Sucn. Rosado v. Acevedo Marrero, *supra*, pág. 918; Zambrana v. Hospital Santo Asilo de Damas, 109 DPR 517, 522 (1980). El valor probatorio del testimonio pericial depende de varios factores. Entre estos, tomará en consideración las cualificaciones del perito, la solidez de las bases de su testimonio, la confiabilidad de la ciencia o técnica subyacente, y la parcialidad del perito. Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R., 150 DPR 658, 664 (2000).

Por ello, el estándar de revisión con respecto a este tipo de testimonio es distinto al de cualquier otro testigo. Los tribunales revisores se encuentran en la misma posición que el Tribunal de Primera Instancia en la apreciación de la prueba pericial. González Rivera v. Robles Laracuente, 203 DPR 645, 667 (2019); Sucn. Rosado v. Acevedo Marrero, *supra,* pág. 918; González Hernández v. González Hernández, *supra*, pág. 777. Por lo cual, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". González Hernández v. González Hernández, *supra*, pág. 777.

No obstante, la parte que impugna la determinación judicial ante un foro apelativo tiene el deber de ponerlo en posición para que este pueda conceder el remedio solicitado. Moran v. Marti, 165 DPR 356, 366 (2005). De esta forma, la parte promovente tiene la responsabilidad de acompañar la prueba necesaria para demostrar que el foro recurrido cometió el error alegado o que abuso de su discreción. Íd. Conforme a ello, la Regla 19 de nuestro Reglamento dispone:

(A) Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de esta por parte del tribunal apelado, deberá reproducir la prueba oral […]

Regla 19 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. 37, 215 DPR ___ (2025).

Igualmente, cuando se trata de una parte que plantea la comisión de un error en la apreciación o la suficiencia de la prueba, nuestro Tribunal Supremo ha expresado lo siguiente:

[S]i la parte apelante no reproduce la prueba oral el tribunal apelativo no podrá cumplir cabalmente su función revisora. Esto, pues sin la reproducción de la prueba oral, los tribunales apelativos no podrán evaluar si las determinaciones de hechos del juzgador se basaron en pasión, perjuicio, parcialidad o error manifiesto.

Rivera Lamberty v. Rodríguez Amador, 205 DPR 194, 200-201 (2020).

Por ello, ante la falta de la transcripción de la prueba oral, nuestra función revisora recae sobre la comisión de algún error de derecho, de este desprenderse del expediente apelativo. Santos Green v. Cruz, 100 DPR 9, 15 (1971). De lo contrario, procederá la desestimación del recurso o la confirmación de la determinación apelada.

### III.

En el caso ante nos, la parte apelante alegó que el Foro Primario erró al tomar una determinación respecto a la expropiación forzosa de la propiedad en cuestión, basándose en un *Informe de Revisión*, y no en un *Informe de Valoración*. Igualmente, adujo que el Foro *a quo* incidió al basar su dictamen en un testimonio que alegó que constituía prueba de referencia. Habiendo examinado los referidos señalamientos, a la luz de los hechos establecidos y el derecho aplicable, resolvemos confirmar la *Sentencia* apelada.

Tal cual esbozado en el resumen doctrinal, como parte del legajo de un procedimiento de expropiación forzosa se requiere un informe de valoración que exponga la investigación que llevó a cabo el tasador, así como el análisis que realizó para sustentar el estimado del justo valor otorgado a la propiedad en controversia. En el caso ante nos, surge de la *Sentencia* apelada que la Administración de Terrenos presentó como perito al tasador Cruz Lanausse, quien llevó a cabo una revisión de los *Informes de Valoración* hechos por los dos (2) tasadores, quienes no testificaron en el juicio en su fondo.

Sobre ello, el Foro Primario destacó que Cruz Lanausse llevó a cabo la investigación pertinente antes de producir el aludido informe, siguiendo los parámetros de la USPAP. Específicamente, señaló que el perito visitó en dos (2) ocasiones el terreno en controversia, así como que investigó otras ventas comparables adicionales, las cuales lo llevaron a aceptar como suya la tasación. Como consecuencia de sus hallazgos, este concurrió que el justo valor estimado era de setecientos sesenta y cinco mil quinientos dólares ($765,500.00). El Foro Primario concluyó que, al hacer un análisis sobre la razonabilidad del valor estimado por el previo tasador Núñez Camacho, Cruz Lanausse sustentó la cantidad que consideró como justa compensación.

Según el derecho aplicable, es norma reiterada que, para revisar las decisiones del Foro Primario, la parte que impugna debe presentar evidencia que respalde su reclamo. Sin embargo, no surgen del expediente que obra en autos los *Informes de Valoración* en controversia, ni el aludido *Informe de Revisión*. Por lo cual, nos vemos forzados a darle deferencia a las determinaciones de hechos del Foro Primario. Al analizar las mismas, es nuestra apreciación que, para el *Informe de Revisión,*

Cruz Lanausse realizó su propia investigación para determinar el justo valor de la propiedad, y que esta lo llevó a concurrir con el valor propuesto por Núñez Camacho. De este modo, justipreciamos que se cumplieron con los requisitos de la Regla 58 de Procedimiento Civil, *supra,* y, por tanto, no se cometió el primer señalamiento de error.

Por otro lado, en su segundo señalamiento de error, la parte apelante alegó que, para emitir la *Sentencia* apelada, el Tribunal de Primera Instancia se basó en un testimonio que constituía prueba de referencia. Particularmente, señaló que el testimonio de Cruz Lanausse era prueba de referencia, ya que estaba basado en los *Informes de Valoración* hechos por los otros dos (2) tasadores.

Conforme al derecho reseñado previamente, en el contexto de un testigo pericial, nuestro ordenamiento jurídico ha dispuesto que este puede fundamentar sus opiniones en información que sea utilizada en el campo de la pericia para el asunto en controversia, independientemente de su admisibilidad en evidencia. Aunque los tribunales no están obligados a seguir esta opinión pericial, la parte que impugna las determinaciones de hechos adoptadas por el Foro de Instancia tiene la responsabilidad de presentar la evidencia necesaria para que este Tribunal de Apelaciones pueda determinar la corrección o error de estas. Para desvirtuar la presunción de corrección que ampara las determinaciones de hecho del Foro Primario, la parte apelante debe demostrar que dicho foro incurrió en pasión, prejuicio, parcialidad o error manifiesto. Particularmente, en casos donde la controversia gira en torno a la valoración de una prueba, nuestro Reglamento establece que la parte que la impugna debe reproducir la prueba oral para facilitar su revisión. La omisión de

esta reproducción implica que este Tribunal de Apelaciones deberá darle deferencia a las conclusiones del Foro de Instancia.

En el presente caso, la parte apelante no reprodujo la prueba oral correspondiente a los procedimientos ante el Foro de Instancia, por lo que no nos puso en posición de evaluar si el Foro *a quo* incurrió en error al otorgarle credibilidad al testimonio del señor Cruz Lanausse. En consecuencia, debemos respetar las determinaciones de hecho adoptadas en la *Sentencia* apelada. Al analizar dichas determinaciones, no encontramos que hayan sido producto de pasión, prejuicio o error manifiesto. Por ello, concluimos que el Tribunal de Primera Instancia no erró al admitir el testimonio del referido testigo, y, por ende, no se cometió el segundo señalamiento de error.

Así, evaluado el recurso presentado ante nos y el derecho aplicable, procedemos a confirmar la *Sentencia* apelada.

## IV.

Por los fundamentos expuestos anteriormente, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones