ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| HÉCTOR L. TORRES MALDONADO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE LA VIVIENDA<br><br>Recurrido | TA2026RA00026 | *Revisión Administrativa* procedente del Departamento de la Vivienda<br><br>Caso Núm. COM-23-00429 |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de enero de 2026.

Comparece ante esta Curia, por derecho propio, el señor Héctor L. Torres Maldonado (Sr. Torres Maldonado o Recurrente). Mediante su *Recurso de Revisión de Decisión Administrativa,* cuestiona la *Respuesta Final* del Departamento de la Vivienda, notificada por correo electrónico el 11 de abril de 2025, que ordenó el cierre de su queja ante dicha agencia. Al mismo tiempo, impugna la determinación de Tetra Tech[1] sobre la no procedencia de su reclamación de reembolso bajo el Programa R3 y sobre la cancelación de la garantía, notificada vía correo electrónico, el 10 de noviembre de 2025.

Por los fundamentos que exponemos a continuación, desestimamos el recurso de epígrafe por falta de jurisdicción.

---

[1] Tetra Tech es contratista del Departamento de la Vivienda que provee servicios de gestión bajo el Programa de Reparación, Reconstrucción o Reubicación del Departamento de la Vivienda (Programa R3).

**I.**

El 4 de noviembre de 2023, el Recurrente instó un *Formulario de Solicitud de Reconsideración al Programa de R3* (queja) ante la División Legal de la Oficina de Recuperación de Desastres del Departamento de la Vivienda (Programa CDBG-DR/MIT), relacionada a la construcción de su propiedad por parte del Programa R3. Reclamó en su queja la comisión de presuntas deficiencias eléctricas, estructurales y de plomería en su propiedad, ubicada en la Carretera 815 Km. 0.2, Sector Doña Bacha, Barrio Nuevo del Municipio de Naranjito.

En reacción, la División Legal del Programa CDBG-DR/MIT notificó por correo electrónico su *Respuesta Preliminar a Queja*, el 29 de noviembre de 2023. En el referido escrito, el Departamento de la Vivienda expresó necesitar más tiempo para finalizar la investigación de la queja objeto de este recurso. Además, calendarizó una inspección de la propiedad para el 30 de noviembre de 2023. También, reiteró el compromiso suscrito entre las partes, producto del cual, el Sr. Torres Maldonado acordó no permanecer en la propiedad hasta tanto culminen los trabajos de reconstrucción.

Al cabo de siete (7) meses de la presentación de la queja, el Sr. Torres Maldonado remitió una comunicación a la agencia, fechada el 24 de junio de 2024. En ella hizo constar que, no ha recibido una respuesta final del Departamento de la Vivienda sobre su queja, a pesar de que, durante el mes de febrero de 2024, la agencia realizó la inspección final de su propiedad. Aseguró que, persisten los defectos previamente señalados. Reclamó haber sufrido daños emocionales por no haber podido mudarse y daños materiales de bienes guardados en un almacén.

El 20 de septiembre de 2024, por vez primera a través de un representante legal, el Sr. Torres Maldonado dirigió otro correo electrónico a la División Legal del Programa CDBG-DR/MIT. Reiteró en dicho escrito que, su queja es con relación a unas irregularidades y deficiencias en trabajos eléctricos realizados bajo el Programa R3

que presuntamente ponen en riesgo su seguridad. Agregó que, el 10 de septiembre de 2024, personal del Departamento de la Vivienda y sus contratistas se personaron en su propiedad para entregarle las llaves del inmueble, lo cual este último no aceptó. En consideración a lo anterior, solicitó a la agencia atender su queja, corregir las deficiencias que persisten y certificar la obra conforme a los estándares de seguridad.

El 9 de octubre de 2024, el Departamento de la Vivienda reaccionó a lo anterior y en su respuesta aseguró que la agencia ha atendido el asunto conforme a la Política de Manejo de Quejas. Puntualizó que, la Sección 7.1 de dicha política de manejo le permite extender el tiempo de investigar y responder una queja cuando sea necesario; desglosó las múltiples reuniones, visitas y solicitudes de información sobre esta causa; y detalló los trabajos completados como parte de la atención a esta queja.

El Departamento de la Vivienda destacó que "el Sr. Torres estuvo presente durante la mayor parte de las inspecciones y visitas, incluyendo el recorrido final, donde el área programática de vivienda validó que todas las deficiencias identificadas en el recorrido del 6 de agosto de 2024 habían sido corregidas. En esa misma inspección, el personal del contratista realizó pruebas al sistema eléctrico para asegurar su correcto funcionamiento, entregó las garantías, especificaciones de equipos, permisos y proporcionó la certificación del perito electricista que realizó los trabajos."[2] Añadió que, el cambio de parrilla en el área de la carretera y la conexión eléctrica del portón están fuera del alcance del trabajo acordado con el contratista, por lo cual no proceden. Decretó el cierre de la queja, y expresó que, lo antes, "implicará la finalización de los pagos por concepto de ORA [Asistencia de Renta Temporera] y almacenaje."

Surge del expediente que, el 5 de febrero de 2025, el representante legal del Sr. Torres Maldonado cursó otra

---

[2] Durante esta inspección, se realizó el primer intento de entrega de llaves al participante, quien no las aceptó.

comunicación al Departamento de la Vivienda en la cual detalló los siguientes asuntos como pendientes:

> \* Alcantarilla doblada y hormigón partido frente a la residencia. Solicitud de reemplazo de alcantarilla y reparación de hormigón.
> \* Certificación de todos los trabajos eléctricos realizados en la propiedad. Tubería fue antorchada, se quemó y está doblada.
> \* Solicitud de planos actualizados con todos los trabajos realizados *(blueprint).*
> \* Portón eléctrico para acceso a la propiedad no cuenta con electricidad.
> \* Reparación de cablería que va desde el portón hacia la toma de electricidad.
> \* Solicitud de la persona contacto con Rebuilders[3] para seguimiento a reporte de incidente del 12 de febrero de 2024 relacionado al supervisor Figueroa.

De conformidad, solicitó a la agencia resolver los señalamientos, corregir las deficiencias y continuar emitiendo los pagos de Asistencia de Renta Temporera hasta tanto los trabajos pendientes sean recertificados. Añadió que, una vez se corrijan tales asuntos deben entregar la llave del inmueble directamente al Sr. Torres Maldonado.

El 11 de abril de 2025, el Departamento de la Vivienda cursó su *Respuesta Final.* En ella, aseguró haber atendido todos los asuntos planteados que entendieron procedentes. Reiteró que el reemplazo de la alcantarilla no procede por corresponder a una solicitud previamente denegada, que no forma parte del Alcance de los Trabajos aprobado. Aclaró que, "los elementos de infraestructura externa, tales como alcantarillas, aceras u otros bienes de titularidad municipal, no son elegibles bajo este Programa." Enfatizó que el Sr. Torres Maldonado fue orientado de que puede canalizar dicha solicitud directamente ante el Municipio de Naranjito.

Certificó que los trabajos eléctricos que realizó el personal del Departamento de la Vivienda bajo su supervisión fueron ejecutados conforme a los códigos eléctricos vigentes, asunto que consideró como debidamente atendido. En atención a la solicitud de planos, los incluyó como anejo a esta respuesta.

---

[3] Rebuilders PR, LLC es un contratista del Departamento de la Vivienda bajo el Programa R3.

En cuanto al cuarto asunto, la agencia denegó su procedencia por tratarse de un trabajo individual y adicional entre el contratista y el Sr. Torres Maldonado, que no contó con la autorización expresa de la agencia y que no forma parte del Alcance de los Trabajos. Sobre un incidente suscitado el 12 de febrero de 2024, el Departamento de la Vivienda señaló haber referido el asunto al personal correspondiente, quienes le confirmaron haber activado el protocolo aplicable al trato respetuoso, sensible y cortés hacia los ciudadanos.

Con relación a las llaves de la propiedad, y según le fue notificado desde el 13 de enero de 2025, la agencia reafirmó que el Sr. Torres Maldonado las puede recoger en las oficinas de Tetra Tech en Metro Office Park, Calle 1, Lote 15, Suite 201, en el Municipio de Guaynabo. Aclaró que, a tenor de la Sección 16.14 de las Guías del Programa R3, aun cuando el Sr. Torres Maldonado no acepte el trabajo como completado, el Gerente del Programa puede declararlo como un proyecto terminado, siempre y cuando las labores se realizaron en cumplimiento con los requisitos del Alcance de los Trabajo y con las órdenes de cambio aplicables. Abundó que, el cierre de la queja implica la culminación del pago por concepto de Asistencia de Renta Temporera y almacenaje. De conformidad, resolvió que no procede el desembolso por tales conceptos.

En atención a unas expresiones del Sr. Torres Maldonado durante el proceso de recopilación de datos, la agencia destacó el alcance del Acuerdo de Subvención suscrito entre las partes, que requiere que la propiedad objeto de la intervención del Programa R3 constituya su residencia principal, que cumpla con el periodo de ocupación obligatorio y el deber del Sr. Torres Maldonado de proveer información veraz a lo largo del proceso. Lo apercibió del posible inicio de un procedimiento de recobro de acreditarse que este ha incumplido con los términos contractuales del Programa. Por todo lo antes, notificó su *Respuesta Final* decretando el cierre de la queja objeto de este recurso.

De otra parte, surge del expediente que, en respuesta a unos señalamientos de LUMA sobre el pedestal eléctrico de su propiedad, el Sr. Torres Maldonado contrató a un tercero para modificarlo. Posteriormente, reclamó a Tetra Tech el reembolso de tales gastos, bajo la cubierta de garantía con el Programa R3. Mediante una notificación remitida el 10 de noviembre de 2025, Tetra Tech le informó que su reclamo de garantía no procedía debido a que el Programa R3 no reembolsa reparaciones realizadas por terceros ajenos al contratista o al programa. Agregó que, la intervención de un tercero invalidó cualquier reclamación futura de garantía relacionada al sistema eléctrico.

En desacuerdo, el Sr. Torres Maldonado acudió ante la división de Asuntos Públicos y Comunitarios del CDBG-DR/MIT. Obra en el expediente la respuesta remitida por la agencia, el 10 de diciembre de 2025, mediante la cual le informó que su reclamación de reembolso no procede ante la invalidación de la garantía.

Inconforme aun, el Recurrente acude ante esta Curia, por derecho propio. A pesar de que no incluyó propiamente un señalamiento de error, se desprende de su escrito su descontento con la *Respuesta Final* del Departamento de la Vivienda, notificada el 11 de abril de 2025 y con la determinación de Tetra Tech, notificada el 10 de noviembre de 2025 referente al reembolso solicitado y a la garantía.

Hemos examinado con detenimiento el recurso sometido por el Recurrente y optamos por prescindir de los términos, escritos o procedimientos ulteriores "con el propósito de lograr su más justo y eficiente despacho". Regla 7 (b) (5) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42. Resolvemos.

**II.**

**A. La jurisdicción**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Greene y otros v. Biase y otros,* 2025 TSPR 83, resuelto el 21 de agosto de 2025. Es por ello, que, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Municipio de Río Grande y otro v. Adquisición de Finca 27.661 de la Urbanización Industrial Las Flores, del Término Municipal de Río Grande y otros,* 2025 TSPR 36, resuelto el 4 de abril de 2025. Por consiguiente, el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. *R&B Power, Inc. v. Junta de Subastas ASG,* 213 DPR 685 (2024). Ello, pues los tribunales tienen la responsabilidad indelegable de examinar, en primera instancia, su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019).

Con respecto al procedimiento para formalizar un recurso de revisión judicial ante este Tribunal, la Regla 57 del Reglamento del Tribunal de Apelaciones, *supra,* establece que el recurso de revisión debe ser presentado dentro del término de treinta (30) días, siguientes al archivo en autos de una copia de la notificación de la orden o resolución final del organismo o agencia.

En virtud de lo anterior, si una parte acude ante esta Curia fuera del término que dispone la Regla 57 de nuestro Reglamento, *supra,* su recurso es tardío. Como consecuencia, el Tribunal de Apelaciones tendría la obligación de declararse sin jurisdicción, pues sabemos que, un recurso tardío adolece del grave e insubsanable defecto de falta de jurisdicción y debe ser desestimado. Regla 83(C) del Reglamento del Tribunal de Apelaciones, *supra.* Ello, debido a que, ante un recurso prematuro o tardío el foro revisor no tiene autoridad judicial o administrativa para acogerlo. *Pueblo v. Ríos Nieves,* 209 DPR 264, 274 (2022).

Aún más, la desestimación de un recurso tardío priva de manera fatal que el recurso pueda presentarse nuevamente ante

cualquier foro. *Íd.* Por ello, cuando un tribunal determina que carece de jurisdicción para intervenir en un asunto, procede la inmediata desestimación del recurso apelativo, en atención a las leyes y reglamentos para el perfeccionamiento de estos recursos. *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 385 (2020). A esos efectos, la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, *supra*, faculta al foro apelativo a actuar por iniciativa propia para desestimar un recurso apelativo ante la ausencia de jurisdicción.

Lo anterior responde a que, la ausencia de jurisdicción trae varias consecuencias, tales como el que no sea susceptible de ser subsanada; las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso; y puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. Allied Mgmt. Group v. Oriental Bank,* supra.

### III.

Resulta prioritario para esta Curia auscultar nuestra jurisdicción, antes de ejercer la función revisora que se nos delegó. Podemos colegir del recurso de epígrafe que, el Recurrente solicita que intervengamos y dejemos sin efecto las determinaciones del Departamento de la Vivienda y de Tetra Tech (en representación de la agencia) referentes a su reclamación sobre trabajos eléctricos adicionales, a la suspensión de los pagos de Asistencia de Renta Temporera y a la negativa de reembolsar los gastos eléctricos realizados por un tercero contra la garantía del Programa R3.

Ahora bien, constatamos del expediente ante esta Curia que, la *Respuesta Final* del Departamento de la Vivienda que objeta el Recurrente fue notificada el 11 de abril de 2025. A partir de esa fecha comenzó a transcurrir el término jurisdiccional de treinta (30) días que tenía el Recurrente para recurrir en revisión ante este

Tribunal, vencedero el 12 de mayo de 2025. Cabe señalar que, la determinación de Tetra Tech, sobre la denegatoria a la reclamación de la garantía, le fue remitida el 10 de noviembre de 2025, por correo electrónico y postal. De manera que, el Recurrente tenía hasta el 10 de diciembre para cuestionarla ante nos.

Nótese que, obra en el expediente un correo electrónico que personal de Asuntos Públicos y Comunitarios del Departamento de la Vivienda remitió al Recurrente el 10 de diciembre de 2025. Allí le reafirmaron que, tras consultar con la División Legal de la agencia, su reclamación sobre la garantía no procede. Aun si atendemos este asunto de la manera más beneficiosa para el Recurrente y tomamos como punto de partida esa notificación del 10 de diciembre de 2025, el término para acudir ante esta Curia en revisión judicial venció el 9 de enero de 2026.

De manera que, es incuestionable que el recurso de revisión que instó el Sr. Torres Maldonado, el 16 de enero de 2026, resultó tardío. Conforme a la normativa antes expuesta, al presentar su escrito tardíamente, estamos obligados a ordenar su desestimación por cuanto carecemos de jurisdicción para atenderlo. Según discutido, los tribunales estamos llamados a ser celosos guardianes de nuestra jurisdicción, sin poseer discreción para asumirla donde no la hay.

**IV.**

Por los fundamentos antes expuestos, desestimamos el recurso por falta de jurisdicción.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones