EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Osvaldo Friger Salgueiro<br><br>Peticionario<br><br>v.<br><br>Mech-Tech College, LLC;<br>Mech-Tech Management, LLC;<br>Artificial Intelligence<br><br>Recurridos | Certiorari<br><br>2026 TSPR 30<br><br>218 DPR ___ |

Número del Caso:  CC-2024-0401

Fecha:  20 de marzo de 2026

Tribunal de Apelaciones:

    Panel X

Representante legal de la parte peticionaria:

    Lcdo. Luis E. Vivoni López

Representante legal de la parte recurrida:

    Lcdo. Luis Martínez Lloréns

Materia: Ley de Propia Imagen – Derecho sobre la propia imagen en el contexto de una relación laboral.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Osvaldo Friger Salgueiro

    Peticionario

       v.                CC-2024-0401

Mech-Tech College, LLC;
Mech-Tech Management, LLC;
Artificial Intelligence

    Recurridos


La Jueza Presidenta ORONOZ RODRÍGUEZ emitió la Opinión del Tribunal



En San Juan, Puerto Rico a 20 de marzo de 2026.

En esta ocasión nos corresponde auscultar el alcance del derecho sobre la propia imagen en el contexto de una relación laboral. En específico, debemos determinar si ciertas corporaciones violaron el derecho sobre la propia imagen del Sr. Osvaldo Friger Salgueiro (señor Friger Salgueiro) al publicar material audiovisual que lo incluía. Lo anterior, luego de que estas terminaran su relación laboral con el señor Friger Salgueiro y de que este solicitara el cese y desista de la utilización de su imagen.

Tras estudiar el expediente ante nos y examinar las normas legales aplicables, establecemos que el derecho sobre la propia imagen tiene dos vertientes

-una correspondiente al derecho propietario o al derecho a la publicidad, y una correspondiente al derecho de personalidad. En esta ocasión, interpretamos que el derecho a la publicidad o los derechos sobre la propia imagen comerciales son transmisibles únicamente a través de un acuerdo escrito o mediante sucesión intestada, sin importar la relación laboral, contractual, o de otra naturaleza habida entre las partes. Así, en ausencia de un acuerdo escrito, la imagen se podrá utilizar para fines comerciales o publicitarios únicamente con el consentimiento del derechohabiente, quien podrá retirarlo en cualquier momento. En consecuencia, determinamos que las corporaciones aquí recurridas violaron el derecho sobre la propia imagen comercial del señor Friger Salgueiro y revocamos el dictamen que emitió el Tribunal de Apelaciones.

## I

El 12 de diciembre de 2018 el señor Friger Salgueiro presentó una *Demanda* sobre daños y perjuicios en contra de Mech-Tech College, LLC; Mech-Tech Management, LLC; Artificial Inteligenge, Corp. d/b/a Artificial Intelligence, Corp.; Compañía Aseguradora ABC; Compañía Aseguradora DEF, y Compañía Aseguradora XYZ (en conjunto, Mech-Tech). Sostuvo que fue empleado de Mech-Tech desde enero de 2010 hasta octubre de 2017. Indicó que su labor consistió en la producción y dirección de contenido promocional. Alegó que no transfirió los derechos de uso de su imagen a Mech-Tech por escrito y que esta última utilizó su imagen para fines comerciales y publicitarios sin su consentimiento. Arguyó que, a pesar de solicitar el cese y desista, Mech-Tech continuaba utilizando

su imagen en plataformas de redes sociales y medios televisivos de forma ilegal y sin autorización. Solicitó que se ordenara a Mech-Tech el cese y desista de la utilización de su imagen y que se le concediera una indemnización de no menos de quinientos mil dólares ($500,000).

El 22 de marzo de 2019 Mech-Tech presentó su *Contestación a demanda* mediante la cual negó las alegaciones en su contra. Arguyó que aplicaba la doctrina de obra hecha por encargo por lo que el señor Friger Salgueiro no podía reclamar violación al uso de su imagen. Adujo que era propietaria de los derechos de propiedad intelectual sobre los videos que creó y en los cuales aparecía el señor Friger Salgueiro. Indicó que el señor Friger Salgueiro no era su empleado, sino un contratista independiente de Artificial Intelligence, Corp. y que prestaba servicios para el departamento de producción de esa corporación.

El 28 de julio de 2021 Mech-Tech presentó una *Moción de sentencia sumaria* mediante la cual reiteró su posición y solicitó la desestimación de la *Demanda*. En respuesta, el 7 de septiembre de 2021 el señor Friger Salgueiro presentó una *Oposición a moción de sentencia sumaria y solicitud para que se dicte sentencia sumaria parcial interlocutoria a favor de Osvaldo Friger Salgueiro*. Alegó que mientras trabajó con Mech-Tech brindó su consentimiento de manera tácita para que esta utilizara su imagen. No obstante, adujo que una vez terminó su relación contractual no consintió al uso posterior de su imagen. Sostuvo que, a esos efectos, el 5 de octubre de 2018

envió una misiva en la cual solicitó a Mech-Tech el cese y desista del uso de su imagen. El 14 de septiembre de 2021 Mech-Tech presentó una *Réplica a oposición a moción de sentencia sumaria*.

El 1 de diciembre de 2021 el Tribunal de Primera Instancia celebró una vista argumentativa. Posteriormente, el foro primario notificó una *Resolución* mediante la cual declaró no ha lugar las solicitudes de sentencia sumaria que presentaron las partes. Esto, pues entendió que existía controversia sustancial sobre el consentimiento que prestó el señor Friger Salgueiro para el uso de su imagen, su extensión, y sus términos y condiciones.

En lo pertinente a esta controversia, el foro de instancia plasmó como hechos incontrovertidos que:

1. En o alrededor de noviembre de 2010 el señor Friger Salgueiro cursó una propuesta a Mech-Tech para producir unos infomerciales;
2. Los videos a los que se refiere la *Demanda* son los que se grabaron durante la relación laboral entre las partes de 2010 a 2017 y en los que aparece la imagen y/o voz del señor Friger Salgueiro;
3. Todo el material creado y publicado durante la vigencia de la relación de trabajo se utilizó con el consentimiento del señor Friger Salgueiro;
4. Mech-Tech terminó la relación laboral entre las partes unilateralmente en o alrededor del 27 de septiembre de 2017;
5. El 5 de octubre de 2018 el señor Friger Salgueiro cursó una carta a Mech-Tech en la cual expresamente solicitó que cesara de utilizar su imagen y la remoción de todo material en el cual esta se utilizara de toda y cualquier plataforma o medio, y que
6. Mech-Tech continuó utilizando la imagen del señor Friger Salgueiro con fines promocionales luego de que este envió la carta de cese y desista.

El 14 y 15 de marzo de 2023 se celebró el juicio en su fondo. El 15 de septiembre de 2023 el foro primario notificó una *Sentencia*. Esbozó las determinaciones de hechos

previamente señaladas y, para la adjudicación de los asuntos en controversia, añadió las siguientes determinaciones:

> 1. Las partes **acordaron verbalmente** que el [señor Friger Salgueiro] habría de prestar sus servicios a [Mech-Tech], en las labores descritas en los hechos incontrovertidos, a cambio de una suma mensual de dinero. Esta suma varió con el transcurso del tiempo en la medida que también variaron los servicios que el [señor Friger Salgueiro] prestaba.
> .    .    .    .    .    .    .    .
> 4. El [señor Friger Salgueiro] **no otorgó documento alguno transfiriendo la titularidad del material producido**, a [Mech-Tech].
> 5. **El [señor Friger Salgueiro]** no era empleado de [Mech-Tech], **era contratista.**
> 6. El [señor Friger Salgueiro] **no suscribió documento alguno en el que cediera a [Mech-Tech] el derecho al uso de su imagen** de manera temporal, irrestricta o a perpetuidad.
> .    .    .    .    .    .    .    .
> 8. [Mech-Tech] continuó utilizando el material producido por el [señor Friger Salgueiro], que incluía su imagen, una vez culminada su relación contractual.
> .    .    .    .    .    .    .    .
> 10. El [señor Friger Salgueiro] no pudo demostrar la cuantía económica alegadamente producida por dichas reproducciones una vez culminada la relación contractual en beneficio de la parte demandada.
> 11. [Mech-Tech] no probó haber adquirido los derechos de imagen del [señor Friger Salgueiro] a perpetuidad. (Negrilla suplida).[1]

Por todo esto, el Tribunal de Primera Instancia dispuso que Mech-Tech no contaba con autorización para utilizar el material audiovisual luego de que recibió la carta de cese y desista. Sin embargo, indicó que no se logró particularizar la cantidad de veces que se utilizó sin consentimiento el referido material. A pesar de esto, el foro primario declaró ha lugar la *Demanda* y ordenó que Mech-Tech cesara de inmediato de utilizar todo material en el que se incluyera la imagen del señor Friger Salgueiro. Además, ordenó a Mech-Tech a pagar veinte mil dólares ($20,000) en concepto de daños y cuatro mil dólares ($4,000) en concepto de honorarios de abogado.

Inconforme, el 16 de octubre de 2023 Mech-Tech presentó

---

[1]Apéndice del *certiorari*, págs. 37-38.

un recurso de apelación ante el Tribunal de Apelaciones. Alegó que: (1) el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia porque las leyes federales aplicables ocupan el campo; (2) la propuesta que cursó el señor Friger Salgueiro a Mech-Tech en 2010 constituyó un contrato por escrito entre las partes; (3) era dueña del material audiovisual en controversia; (4) el señor Friger Salgueiro no presentó prueba que justificara la compensación de veinte mil dólares ($20,000), y que (5) el foro primario erró al imponer honorarios de abogado.

El 31 de junio de 2024 el foro apelativo intermedio notificó una *Sentencia* mediante la cual revocó la determinación del Tribunal de Primera Instancia. Concluyó que, en ausencia de un contrato en el que claramente se estableciera el alcance de los trabajos contratados y la renuncia a su titularidad por parte del señor Friger Salgueiro, no se podía concluir que aplicaba la doctrina de obra hecha por encargo. Es decir, indicó que el foro primario no erró al concluir que el material audiovisual y los derechos de la imagen del señor Friger Salgueiro le pertenecen a este último. No obstante, sostuvo que el foro primario erró al conceder una compensación en daños a pesar de que el señor Friger Salgueiro no logró evidenciar cuántas veces Mech-Tech divulgó o difundió su imagen sin su consentimiento. Ante esto, razonó que procedía desestimar la *Demanda*.

En desacuerdo, el 3 de junio de 2024 el señor Friger Salgueiro acudió ante este Tribunal mediante *Certiorari*. Alega que el Tribunal de Apelaciones erró al revocar la

determinación del Tribunal de Primera Instancia a pesar de que este último estableció como hecho incontrovertido, en una *Resolución* del 2022 que advino final y firme, que Mech-Tech utilizó su imagen luego de que este le cursara una carta de cese y desista. Aduce que esto constituye la ley del caso por lo que quedó probado que, en efecto, Mech-Tech violó su derecho a su propia imagen.[2] Así, solicita que revoquemos el dictamen recurrido y que modifiquemos la cuantía que concedió el Tribunal de Primera Instancia por concepto de daños. Esto, pues entiende que en el expediente hay prueba suficiente para que el foro primario concediera una cantidad mayor.

Mientras que, en su alegato, Mech-Tech sostiene que el señor Friger Salgueiro no probó su causa de acción. Aduce que la Ley Núm. 139- 2011, 32 LPRA sec. 3151 *et seq.*, conocida como *Ley del Derecho sobre la Propia Imagen* (Ley de propia imagen) exige que se demuestren las violaciones al derecho de la propia imagen y que el señor Friger Salgueiro no pudo demostrar cuántas veces, si alguna, se violó este derecho. Solicita que se confirme el dictamen recurrido.

Contando con las comparecencias de las partes, resolvemos.

## II

### A. *La jurisdicción y el campo ocupado*

La jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que

---

[2] De igual modo, el Sr. Osvaldo Friger Salgueiro arguye que el foro apelativo intermedio erró al no adjudicar la titularidad sobre la propiedad intelectual que creó, a pesar de tener ante su consideración los elementos necesarios para hacerlo.

tiene ante sí. FCPR v. ELA et al., 211 DPR 521, 529 (2023); Cobra Acquisitions v. Mun. Yabucoa et al., 210 DPR 384, 394 (2022); Pueblo v. Rivera Ortiz, 209 DPR 402, 414 (2022); Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021). Para adjudicar un caso, es esencial que el tribunal tenga jurisdicción sobre la materia y sobre las partes litigiosas. FCPR v. ELA et al., *supra*, pág. 530. Véase tambien Cobra Acquisitions v. Mun. Yabucoa et al., *supra*. Por tanto, "el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional". FCPR v. ELA et al., *supra*, (citando a Torres Alvarado v. Maderas Atiles, 202 DPR 495, 500 (2019)).

En ese sentido, hemos expresado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción. FCPR v. ELA et al., *supra*; Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 268 (2018). Así, los asuntos concernientes a la jurisdicción son privilegiados y se deben atender de forma preferente. FCPR v. ELA et al., *supra*; Ruiz Camilo v. Trafon Group, Inc., *supra*. "Si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia". FCPR v. ELA et al., *supra*, pág. 530, citando a Mun. de San Sebastián v. QMC Telecom, 190 DPR 652, 660 (2014).

Una de las instancias en las cuales un foro judicial actúa sin jurisdicción es cuando adjudica una controversia que versa sobre un área del derecho en la cual el derecho federal ocupa el campo. Como norma general, los "tribunales estatales

tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales". Mun. Río Grande v. Adq. Finca et al., 2025 TSPR 36, 215 DPR ___ (2025), citando a González v. Mayagüez Resort & Casino, 176 DPR 848, 856 (2009). No obstante, en algunas circunstancias el gobierno federal puede tener jurisdicción exclusiva. Íd. Esto, cuando el Congreso federal así lo disponga expresamente o cuando la intención clara de la ley sea privar a los tribunales estatales de autoridad sobre el asunto. Íd. Es en estas circunstancias en las que opera la doctrina del campo ocupado.

Como explicamos en González v. Mayagüez Resort & Casino, supra, pág. 857, la doctrina del campo ocupado tiene dos aspectos —el legislativo y el adjudicativo. La jurisdicción legislativa se refiere a qué ley aplica a una controversia, mientras que la jurisdicción adjudicativa se refiere a qué foro judicial (estatal o federal) está autorizado para atender una controversia. Íd.

### B. El Derecho sobre la propia imagen

La Carta de Derechos de la Constitución de Puerto Rico consagra una protección expresa al derecho de la intimidad y la dignidad de las personas. Art. II, Secs. 1 y 8, Const. de PR, LPRA, Tomo 1. Hemos expresado que es un derecho de personalidad, fundamental y de alta envergadura que opera por su propia fuerza y se puede hacer valer entre personas

privadas. Vigoreaux Lorenzana v. Quizno's, 173 DPR 254, 262 (2008); López Tristani v. Maldonado, 168 DPR 838, 850 (2006).

Como vertiente del derecho a la intimidad, hemos reconocido que el derecho a la propia imagen es un derecho a la personalidad. Vigoreaux Lorenzana v. Quizno's, *supra*, pág. 263. La propia imagen constituye un atributo fundamental con el cual se individualiza socialmente a la persona —es una parte integral de la identidad del sujeto que se representa. Íd. Es por esto que hemos expresado que la propia imagen es "digna de tutela por su estrecha relación con la intimidad de la persona como con su honor". López Tristani v. Maldonado, *supra*, pág. 851, citando a J. Santos Briz, *La Responsabilidad Civil*, Madrid, Ed. Montecorvo, 1993, Vol. I, págs. 199-201. Este derecho otorga a su titular la facultad ante todos y todas de excluir que un tercero reproduzca o publique su propia imagen sin consentimiento. Vigoreaux Lorenzana v. Quizno's, *supra*, pág. 266.

Por otro lado, la legislatura aprobó la Ley de propia imagen. Esta define la imagen de la siguiente manera:

> [N]ombre, fotografía, retrato, voz, firma, atributo o cualquier representación de una persona que sirva para identificar a esa persona, ante un observador o escucha promedio, mediante cualquier procedimiento o técnica de reproducción. 32 LPRA sec. 3151 (c).

Asimismo, establece que cualquier persona natural o jurídica que utilice la imagen de otra persona con fines o propósitos comerciales o publicitarios sin su consentimiento responderá por los daños que cause.[3] 32 LPRA sec. 3152. En cuanto a los

---

[3] La ley define un propósito comercial como "el uso de la imagen de una persona en conexión con el anuncio, la oferta de venta o la venta de un

remedios disponibles para el resarcimiento de dichos daños, la ley establece que:

> El tribunal, en su discreción, podrá fijar la cuantía de los daños en una cantidad que no exceda tres (3) veces la ganancia del demandado y/o la pérdida del demandante cuando determine que la violación fue intencional o de mala fe.
>
> En la alternativa, el demandante **podrá optar por solicitarle al tribunal, daños estatutarios**. Los daños estatutarios **podrán fijarse en una cuantía no menor de $750 ni mayor de $20,000 por violación**, según el tribunal lo considere justo. En un caso en el cual el tribunal determine que la violación fue intencional o debido a una negligencia crasa, el tribunal, en su discreción, podrá aumentar la cuantía de daños estatutarios a una suma no mayor de $100,000 por violación. Cada violación bajo estos daños estatutarios será equivalente al acto de la utilización ilegal de la imagen del reclamante en un trabajo, independiente del número de copias que se hagan del trabajo en cuestión en un momento dado.
>
> Además, **si el caso se resuelve a favor del titular del derecho, el tribunal siempre fijará la cuantía de las costas, honorarios y gastos del pleito a favor de [e]ste**. (Negrilla suplida). 32 LPRA sec. 3153.

Además, la ley dispone que el derecho sobre la propia imagen es **transmisible "a través de una transferencia escrita**, incluyendo, pero no limitándose a un contrato firmado entre las partes, poderes, licencias, donaciones y testamentos, o mediante sucesión intestada". (Negrilla suplida). 32 LPRA sec. 3154.

### C. La doctrina de la ley del caso

La doctrina de la ley del caso establece que, salvo situaciones excepcionales, un tribunal no debe reexaminar asuntos que ya se han considerado dentro de un mismo caso. Berkan et al. v. Mead Johnson Nutrition, 204 DPR 183, 200 (2020). Así, los derechos y las obligaciones que se han adjudicado en el ámbito judicial mediante dictamen firme

---

producto, mercancía, bien o servicio en el mercado" y un propósito publicitario como "el uso de la imagen de una persona al difundir o informar al público sobre un bien o servicio en el mercado a través de los medios de comunicación, incluyendo el uso en los anuncios institucionales". Íd., secs. (h) e (i).

constituyen la ley del caso. Íd.; Mgmt. Adm. Servs. Corp. v. E.L.A., 152 DPR 599, 606 (2000). De esa forma, velamos por el trámite ordenado y expedito de los litigios y promovemos la estabilidad y certeza del derecho. Berkan et al. v. Mead Johnson Nutrition, *supra*; Núñez Borges v. Pauneto Rivera, 130 DPR 749, 755 (1992); Torres Cruz v. Municipio de San Juan, 103 DPR 217, 222 (1975).

La doctrina de la ley del caso aplica a las controversias que haya adjudicado tanto un tribunal de instancia como un tribunal apelativo. Berkan et al. v. Mead Johnson Nutrition, *supra*, pág. 201. Para que un dictamen judicial sea ley del caso debe constituir una decisión final, firme y en los méritos de la cuestión considerada y decidida. Íd. Como norma general estas determinaciones obligan a los foros judiciales si el caso vuelve ante su consideración. Íd.; Don Quixote Hotel v. Tribunal Superior, 100 DPR 19, 29-30 (1971).

No obstante, si el asunto adjudicado regresa ante la consideración del tribunal mediante los mecanismos apropiados, este podrá reexaminar la determinación previa y aplicar una norma de derecho distinta para evitar que ocurra una grave injusticia. Berkan et al. v. Mead Johnson Nutrition, *supra.* Esto solo sucede en situaciones excepcionales y cuando el tribunal entienda que sus determinaciones previas son erróneas y podrían causar una grave injusticia. Berkan et al. v. Mead Johnson Nutrition, *supra*; Félix v. Las Haciendas, 165 DPR 832, 844 (2005); Don Quixote Hotel v. Tribunal Superior, *supra*, pág. 30. De esa forma, esta doctrina se podrá descartar si

conduce a un resultado "manifiestamente injusto". <u>Noriega v.</u> <u>Gobernador</u>, 130 DPR 919, 931 (1992), citando a <u>Estado v. Ocean</u> <u>Park Development Corp.</u>, 79 DPR 158, 174 (1956).

**III**

El señor Friger Salgueiro sostiene que Mech-Tech utilizó su imagen para fines publicitarios y comerciales sin su consentimiento desde que este le envió una carta de cese y desista el 5 de octubre de 2018. Arguye que el foro apelativo intermedio erró al determinar que no cumplió con el peso de la prueba para establecer que Mech-Tech utilizó el material audiovisual en controversia, ni la cantidad de veces que divulgó su imagen sin consentimiento.

Por su parte, Mech-Tech sostiene que el señor Friger Salgueiro no probó cuántas veces, si alguna, Mech-Tech utilizó la imagen de este luego de que le enviara la carta de cese y desista. Por ende, sostiene que, sin daños probados, el tribunal no podía conceder un resarcimiento.

De entrada, debemos delimitar los contornos de la controversia ante nuestra consideración. En sus inicios, la controversia en este caso se circunscribía al alegado uso no autorizado de la imagen del señor Friger Salgueiro en violación a la Ley de propia imagen. Esto, pues el señor Friger Salgueiro fundamentó su carta de cese y desista y su subsiguiente *Demanda* exclusivamente en los derechos que surgen del referido estatuto. Ahora bien, durante el trámite del caso ante los foros recurridos, Mech-Tech alegó que era propietario del material audiovisual pues constituía una obra hecha por encargo. De ese modo, arguyó que el foro primario no ostentaba

jurisdicción sobre la materia porque las leyes federales sobre derechos de autor ocupaban el campo. Estas alegaciones fueron objeto de contrainterrogatorio en el juicio en su fondo y dieron paso a que el foro primario emitiera determinaciones de hecho que aluden a derechos de autor sobre el material audiovisual.[4]

Asimismo, el Tribunal de Apelaciones, al auscultar la jurisdicción del Tribunal de Primera Instancia, dispuso que no estábamos ante una obra hecha por encargo —una determinación que también alude a los derechos de autor sobre el material audiovisual.

En este contexto, esta controversia nos presenta la oportunidad de distinguir entre los derechos de autor, en su vertiente patrimonial y en su vertiente moral, de los derechos sobre la propia imagen. Establecida la distinción, auscultamos el alcance de nuestra jurisdicción sobre la materia y delimitamos la controversia.

**A.**

Los derechos sobre la propia imagen corresponden a la representación misma de la persona observada. A saber, protegen lo que constituye un atributo fundamental con el cual se individualiza socialmente a la persona y que es parte integral de la identidad del sujeto representado. Vigoreaux Lorenzana v. Quizno's, *supra*, pág. 263. Estos derechos sobre

---

[4] Como mencionamos, en la *Sentencia* del 15 de septiembre de 2023, el foro primario esbozó como determinación de hecho que "el [señor Friger Salgueiro] no otorgó documento alguno transfiriendo la titularidad del material producido, a [Mech-Tech]". Véase apéndice del *certiorari* pág. 38.

la imagen de la persona tienen, de manera análoga a los derechos de autor, dos vertientes. Por un lado, se encuentran los derechos sobre la propia imagen que protegen el vínculo entre los atributos fundamentales de la persona y su representación ante la sociedad. Esto es, los derechos sobre la propia imagen como derecho de personalidad. Esta faceta está íntimamente ligada a principios constitucionales tales como la dignidad humana y la intimidad. Vigoreaux Lorenzana v. Quizno's, *supra*. De esta forma, los derechos sobre la propia imagen como derechos de personalidad son irrenunciables e intransferibles.

De otro lado, existe un aspecto comercial sobre la propia imagen conocido como el *right of publicity* o el derecho a la publicidad. La Ley de propia imagen incorporó este derecho propietario a nuestro ordenamiento.[5] El derecho a la publicidad implica "el derecho inherente de todo ser humano a controlar el uso comercial de su identidad" de manera tal que su titular pueda "explotar comercialmente su identidad con exclusión de terceras personas".[6] Así, el derecho a la publicidad concierne el aspecto patrimonial y mercantil del derecho sobre la propia imagen.[7] De ese modo, "opera sin las

---

[5] Véase Cabán Vales & Cruz Rivera, *El right of publicity estadounidense en la Ley de derecho sobre la propia imagen*, 53 Rev. Jur, UIPR 495 (2018- 2019).
[6] Íd., págs. 498-99.
[7] Nótese que la Ley Núm. 139-2011, conocida como *Ley de derecho sobre propia imagen*, 32 LPRA sec. 3151 *et seq.*, no aplicará:

> (a) Cuando se utilice la imagen de una persona en cualquier medio como parte de un reportaje noticioso, expresión política, transmisión de evento deportivo o artístico, o una presentación que tenga un interés público legítimo, y en donde no sea utilizada con propósitos comerciales o publicitarios.
> (b) Cuando se utilice la imagen de una persona como parte de

limitaciones o restricciones que tradicionalmente acompañan los derechos de personalidad".[8] "El objeto del derecho a la publicidad es el valor comercial de la identidad de una persona, afín o similar a los derechos patrimoniales de autor".[9] Al considerarse un derecho propietario, el derecho a la publicidad es enajenable y transferible. Como mencionamos, la Ley de propia imagen establece un requisito de forma para la transferencia válida de los derechos a la publicidad —esta transferencia se debe hacer mediante acuerdo escrito o sucesión intestada.

Hemos establecido que, en nuestra jurisdicción, la *Federal Copyright Act*, 17 USC sec. 101 *et seq.*, ocupa el campo en cuanto a los derechos patrimoniales de autor, mas no respecto a los derechos morales de autor. Véase Cotto Morales v. Ríos, 140 DPR 604 (1996); Pancorbo v. Wometco de PR, Inc., 115 DPR 495 (1984). Estos últimos se protegen mayormente mediante legislación estatal –salvo algún aspecto particular que quede excluido por el Título 17. Véase Cotto Morales v. Ríos, *supra*; Pancorbo v. Wometco de PR, Inc., *supra*.

A modo que, si bien los derechos patrimoniales de autor se rigen exclusivamente por las leyes federales de derechos de autor, los derechos sobre la propia imagen, en sus dos

---

[8] una sátira o parodia, en donde el propósito principal del uso de la imagen no sea uno comercial o publicitario. (c) Cuando se utilice la imagen con propósitos de crítica o comentario, académicos o investigativos, siempre que dicha utilización no constituya una explotación encubierta de la imagen protegida. (d) Cuando se utilice la imagen de una persona accesoria. 32 LPRA sec. 3157.

[8] Cabán Vales & Cruz Rivera, *supra*, pág. 504.

[9] Íd., pág. 522.

vertientes,[10] se rigen por nuestro ordenamiento estatal. *Véase* Ley de propia de propia imagen; Vigoreaux Lorenzana v. Quizno's, *supra*; Cotto Morales v. Ríos, *supra,* pág. 612. En consecuencia, no tenemos jurisdicción para dirimir la titularidad sobre los derechos patrimoniales de autor respecto al material audiovisual en controversia. No obstante, sí tenemos jurisdicción para examinar posibles violaciones a los derechos sobre la propia imagen.

Auscultada nuestra jurisdicción, nos corresponde determinar si Mech-Tech utilizó la imagen del señor Friger Salgueiro sin autorización y en contravención a lo dispuesto en la Ley de propia imagen. Asimismo, estamos en posición de determinar qué remedios, si alguno, le corresponden al señor Friger Salgueiro en virtud del derecho aplicable.

**B.**

Establecido esto, procedemos a dirimir si Mech-Tech violó los derechos comerciales sobre la propia imagen o el derecho a la publicidad del señor Friger Salgueiro al amparo de la Ley de propia imagen y el remedio correspondiente.[11] Cabe resaltar que no existe controversia sobre que el señor Friger Salgueiro prestó su consentimiento para que Mech-Tech utilizara el material audiovisual durante la relación laboral entre estos y hasta que cursó la carta de cese y desista del 5 de octubre de 2018. El señor Friger Salgueiro así lo acepta y el Tribunal

---

[10] No existen leyes federales sobre los derechos sobre la propia imagen, sino que es un asunto regulado a nivel estatal.

[11] El señor Friger Salgueiro no hace alegaciones ni solicita remedio alguno por violaciones a los derechos sobre su propia imagen en su faceta de derecho de personalidad por lo que prescindimos de discusión ulterior sobre ello.

de Primera Instancia lo estableció como un hecho incontrovertido en su *Resolución* de 16 de marzo de 2022. Esta *Resolución* advino final y firme por lo que este hecho incontrovertido es ley del caso. Ante esto, corresponde determinar si Mech-Tech utilizó la imagen del señor Friger Salgueiro luego del 5 de octubre de 2018.

Contrario a lo que expresó el foro recurrido, surge del expediente que Mech-Tech utilizó material audiovisual en el que aparecía la imagen del señor Friger Salgueiro al menos una vez luego de que este solicitara el cese y desista.[12] El foro primario, mediante la *Resolución* del 16 de marzo de 2022, expuso como hecho incontrovertido que Mech-Tech utilizó el referido material. En específico, en la determinación de hecho número 23 de la referida *Resolución*, el Tribunal de Primera Instancia dispuso que: "[l]uego de enviada la carta de cese y desista, las demandadas continuaron utilizando la imagen del señor Friger [Salgueiro] con fines promocionales".[13] Como mencionamos, esta *Resolución* advino final y firme por lo que la determinación de hecho esbozada constituye la ley del caso. Incluso, luego de celebrar un juicio en su fondo, el foro primario emitió una *Sentencia* mediante la cual reiteró su determinación sobre el uso continuado del material audiovisual.

Recordemos que solo cabe variar una determinación que constituya ley del caso en situaciones excepcionales y cuando el tribunal entienda que sus determinaciones previas son

---

[12] Apéndice del *certiorari*, pág. 445.
[13] Apéndice del *certiorari*, pág. 536.

erróneas y podrían causar una grave injusticia. Berkan v. Mead Johnson Nutrition Puerto Rico, Inc., *supra*. Del expediente no surge evidencia que nos convenza de que estamos ante tal situación excepcional o conclusión errónea. Ante esto, no coincidimos con el foro apelativo intermedio que dispuso, sin más, que el señor Friger Salgueiro no cumplió con el peso de la prueba para establecer que Mech-Tech utilizó su imagen luego de que este le cursara una carta de cese y desista. Por el contrario, una lectura del expediente refleja que esto era un hecho probado desde 2022.[14]

A pesar de lo anterior, el foro apelativo intermedio expuso que procedía desestimar la *Demanda* pues no se logró establecer la cantidad de ocasiones en las que Mech-Tech utilizó la imagen del señor Friger Salgueiro luego del 5 de octubre de 2018. No obstante, es un hecho incontrovertido que Mech-Tech utilizó la imagen del señor Friger Salgueiro al menos una vez luego de esa fecha. Así, el foro primario estaba en posición de determinar si el señor Friger Salgueiro tenía derecho a un remedio bajo la Ley de propia imagen por al menos un uso sin autorización de la imagen del señor Friger Salgueiro luego del 5 de octubre de 2018. Ante esto, consideramos que el Tribunal de Apelaciones erró al desestimar la *Demanda* bajo este fundamento.

---

[14] Desde el inicio del litigio, antes y después de la carta de cese y desista, Mech-Tech sostuvo que todos los usos del material audiovisual fueron con el consentimiento del señor Friger Salgueiro o porque era una obra hecha por encargo. Es decir, no controvirtieron que habían utilizado el material audiovisual. Ello surgió más adelante cuando comenzaron a aducir que no se probaron cuántas veces se utilizó el referido material.

Surge de la *Resolución* del 16 de marzo de 2022 que en el año 2010 el señor Friger Salgueiro cursó una propuesta a Mech-Tech para producir ciertos infomerciales.[15] Asimismo, el foro primario determinó que el señor Friger Salgueiro participó como talento en distintos videos, contenido y eventos para representar y promover los productos y servicios de Mech-Tech. Como señalamos anteriormente, en la determinación de hecho número 24 de la *Resolución*, el foro primario dispuso que el uso de la imagen fue para fines promocionales. Por todo esto, constituye, además, ley del caso que Mech-Tech utilizó la imagen del señor Friger Salgueiro para fines publicitarios o comerciales. Ninguna de las partes controvierte este hecho.

Ahora bien, como señaló el foro primario, el señor Friger Salgueiro prestó su consentimiento para que Mech-Tech utilizara su imagen durante la vigencia de la relación laboral entre estos. Como titular de los derechos sobre su propia imagen, tenía facultad para así hacerlo. No obstante, del Artículo 5 de la Ley de propia imagen, *supra*, surge que una transferencia escrita es un requisito para que se configure una transmisión válida del derecho a la publicidad. Del expediente no surge documento alguno del cual se desprenda que el señor Friger Salgueiro transfirió este derecho a Mech-Tech tal cual requiere la Ley de propia imagen. En ausencia de esta transferencia, el señor Friger Salgueiro mantuvo titularidad sobre los derechos comerciales sobre su propia

---

[15] Nótese que la referida propuesta no se presentó como evidencia ni consta en el expediente.

imagen. En consecuencia, retuvo plena potestad para retirar el consentimiento para el uso de esta y para exigir a Mech-Tech que cesara de utilizarla.

Debido a lo anterior, resulta evidente que Mech-Tech utilizó la imagen del señor Friger Salgueiro para fines comerciales y publicitarios sin ostentar su titularidad, pero con el consentimiento de este hasta el 4 de octubre de 2018. A partir del 5 de octubre de 2018 cualquier uso de la imagen del señor Friger Salgueiro fue sin su consentimiento. En consecuencia, solo resta auscultar si procedía la imposición de una cuantía en concepto de daños a favor del señor Friger Salgueiro.

El Tribunal de Primera Instancia impuso a Mech-Tech el pago de veinte mil dólares ($20,000) por utilizar la imagen del señor Friger Salgueiro sin su consentimiento luego del 5 de octubre de 2018, y cuatro mil dólares ($4,000) por concepto de honorarios de abogado. Lo anterior es cónsono con la Ley de propia imagen*supra*. Como señalamos, la Ley de propia imagen, *supra*, provee remedios ante la violación del derecho sobre la imagen de una persona. Tal como establece la ley, el demandante podrá optar por solicitarle al tribunal daños estatutarios que podrán fijarse en una cuantía no menor de setecientos cincuenta dólares ($750) ni mayor de veinte mil dólares ($20,000) por violación, según el tribunal lo considere justo. 32 LPRA sec. 3153.

En este caso el señor Friger Salgueiro no logró probar la cantidad de usos no autorizados de material audiovisual. No obstante, el foro primario concluyó que Mech-Tech utilizó

material audiovisual con la imagen del señor Friger Salgueiro en al menos una ocasión luego de que este solicitara el cese y desista de uso. Ante esto, el foro primario impuso la cantidad de veinte mil dólares ($20,000), a saber, la suma máxima por una violación. El foro de instancia no se extralimitó en su determinación, sino que impuso una suma permitida en ley ante la infracción acreditada.

Del mismo modo, el foro primario no abusó de su discreción al imponer cuatro mil dólares ($4,000) en concepto de honorarios de abogado. Recordemos que el Artículo 4 de la Ley de propia imagen, *supra*, dispone que, si el caso se resuelve a favor del titular del derecho sobre la propia imagen, el tribunal siempre fijará a su favor la cuantía de las costas, honorarios y gastos del pleito.

**IV**

En la discusión que antecede, delimitamos los contornos de los derechos sobre la propia imagen tanto en su vertiente de derecho a la publicidad como en su vertiente de derecho de personalidad. Cónsono con lo antes expuesto, aclaramos que, por virtud del derecho sobre la propia imagen, el uso de la imagen para propósitos comerciales requiere el consentimiento del titular. Asimismo, concluimos que los derechos sobre la propia imagen son transmisibles únicamente a través de un acuerdo escrito sin importar la relación laboral, contractual, o de otra naturaleza habida entre las partes, o mediante sucesión intestada.

De este modo, aclaramos que aun cuando en este caso no procedía conceder un remedio por violaciones a derechos

morales de autor, conforme con el derecho previamente citado, el foro primario ostenta jurisdicción para dirimir posibles violaciones a los derechos sobre la propia imagen del señor Friger Salgueiro.

En este ejercicio, disponemos que el señor Friger Salgueiro es titular de los derechos comerciales sobre su propia imagen. A esos efectos, concluimos que Mech-Tech violó el derecho sobre la propia imagen del señor Friger Salgueiro en, al menos, una ocasión, por lo que este último tiene derecho a un remedio bajo la Ley de propia imagen, *supra*.

## V.

Por los fundamentos expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones y se modifica la *Sentencia* del Tribunal de Primera Instancia a los efectos de incluir los pronunciamientos aquí esbozados sobre los derechos de la propia imagen indistintamente de los derechos morales de autor sobre el material audiovisual y, así modificada, se confirma.

Se dictará sentencia de conformidad.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Osvaldo Friger Salgueiro

     Peticionario

       v.                   CC-2024-0401

Mech-Tech College, LLC; Mech-Tech Management, LLC; Artificial Intelligence

     Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Por los fundamentos expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones y se modifica la *Sentencia* del Tribunal de Primera Instancia a los efectos de incluir los pronunciamientos aquí esbozados sobre los derechos de la propia imagen indistintamente de los derechos morales de autor sobre el material audiovisual y, así modificada, se confirma.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo